**MAGNOLIA PETROLEUM CO. et al. v.
RAILROAD COMMISSION OF
TEXAS et al.**

No. 4556.

Court of Civil Appeals of Texas. Amarillo.
Jan. 27, 1936.

Rehearing Denied Feb. 24, 1936.

Andrews, Kelley, Kurth & Campbell and
Palmer Bradley, all of Houston, and
Powell, Wirtz, Rauhut & Gideon and
Greenwood, Moody & Robertson, all of
Austin, for appellants.

E. F. Smith and Smith, Brownlee &
Goldsmith, all of Austin, for appellee New
Process Production Co.

William McCraw, Atty. Gen., and Harry
S. Pollard, Asst. Atty. Gen., for appellee
Railroad Commission of Texas.

HALL, Chief Justice.

This suit was filed by the Magnolia Petroleum Company, General Crude Oil Company, and the Sun Oil Company, coplaintiffs, against the Railroad Commission of Texas and the New Process Production Company, as an appeal from an order of the Railroad Commission granting permission to the New Process Production Company to drill three wells, which the company numbered 6, 7, and 8, on 8.61 acres of land in the East Texas oil field.

On March 1, 1916, George Anderson and wife owned a part of the McAnally survey in Gregg county which they thought contained 80 acres of land. On said date, by warranty deed, they conveyed to Walter Anderson the south 50 acres of said tract. Thereafter, on December 1, 1928, they conveyed the north 30 acres by warranty deed

to E. H. Brawley. The deeds described the respective tracts by metes and bounds.

The surveyor testified that he surveyed the 50 acres which the Andersons had conveyed to Walter Anderson, and the 30 acres which they had conveyed to Brawley, according to the field notes contained in the respective deeds; that the two tracts did not join, there being an area between them containing 8.61 acres.

It was stipulated that appellant Magnolia Petroleum Company has a valid lease on the north 30 acres of the Anderson tract, and that the General Crude Oil Company and the Sun Oil Company have a valid lease on the south 50 acres, and that the New Process Production Company has a valid lease on the 8.61 acres.

On March 8, 1934, the New Process Production Company had five producing wells on the 8.61-acre tract, and filed with the Railroad Commission an application for a permit to drill three additional wells, Nos. 6, 7, and 8, on said tract. With this application there was filed a plat showing the location of wells on the entire Anderson tract and the proposed location of the applicant's wells Nos. 6, 7, and 8. Notice of the filing of this application was given on March 16, 1934, to the appellants Magnolia Petroleum Company and General Crude Oil Company, and of the hearing to be held in the offices of the commission on May 1, 1934. No notice was given to the Sun Oil Company. It was agreed, however, that while the General Crude Oil Company and the Sun Oil Company had a valid lease on the south 50 acres, it was operated by the General Crude Oil Company. By "operation" was meant drilling wells, producing and marketing oil, and making whatever accounting was necessary to the Sun Oil Company for its proportionate part of the proceeds of the leasehold which the two companies owned equally.

Pursuant to the notice given March 16, 1934, to the Magnolia Petroleum Company and General Crude Oil Company, the hearing was held on May 1, 1934, on the New Process Production Company's application for permit to drill said three wells. So far as disclosed by the record, the General Crude Oil Company ignored the notice and was not present. The Magnolia Petroleum Company was represented by its attorney, and the New Process Production Company also appeared by its attorney and its vice president and general manager. The hearing was before Mr. J. T. Elliott, chief deputy supervisor of the Oil and Gas Division of the Railroad Commission.

The transcript of the proceedings shows that no witnesses were sworn. Mr. Elliott repeatedly stated that matters pertaining to the Anderson tract of land, particularly the 8.61 acres, had frequently been before the commission, and he therefore invited the parties appearing to make statements, and this method was followed.

On May 4th thereafter Elliott recommended "that the commission sign the attached order denying these applications." On June 29th thereafter the commission made and entered an order granting the application of the New Process Production Company for permit to drill the three wells, and the permit was actually issued and delivered to the company on June 29, 1934. It appears that the permit was granted under an exception to rule 37 of the commission.

Thereafter the New Process Production Company made arrangements to finance the drilling of said three wells and contracted to pay for such drilling $4,000 a well, or $12,000 for the three. The drilling contractor moved on to the 8.61-acre tract about the last days of February, 1935. The New Process Production Company also contracted for and became obligated to pay $18,000 for casing, tubing, and other materials necessary to case said wells and make the connections. Wells Nos. 6 and 7 were drilled and completed, and produced about 850 barrels each per hour on March 15, 1935.

On March 14, 1935, the Magnolia Petroleum Company instituted this suit, and by the amended petition was joined by the General Crude Oil Company and the Sun Oil Company as plaintiffs. The purpose, as disclosed by the prayer, was for a judgment canceling and annulling the order of the Railroad Commission which granted the application for the drilling of the three wells on the 8.61-acre lease, and perpetually enjoining the New Process Production Company from drilling or operating any of said wells, and from producing any oil therefrom.

The case was tried to the court without the aid of a jury, and resulted in a judgment that the New Process Production Company and the Railroad Commission have judgment, and that appellants take nothing by their suit and all relief prayed for by them be denied.

The first assignment of error, submitted as a proposition by the appellants, is that the court erred in rendering judgment against the plaintiffs because they pleaded, and the undisputed evidence showed, that the Railroad Commission, on the 7th day of May, 1934, entered its order denying the application of defendant New Process Production Company for a special permit to drill wells Nos. 6, 7, and 8, and that thereafter, without the issuance of any new notice, the said commission made an order granting said application, and the latter order was void because of the failure to issue or serve notices. The contention of the appellee is that no such order was ever made and signed.

We think the record sustains the appellants' contention. The bound book containing the original signed orders of the Railroad Commission in cases coming under rule 37 was produced in court by Miss Rose Modrall, who was "permit clerk" of the Oil and Gas Division, and who has charge of these records, and she testified with the record book of orders before her. The original signed order, dated May 7, 1934, denying the application for the wells herein involved, was in that book and was introduced in evidence, and by agreement a certified copy of this order was filed in lieu of the original. There could be no more conclusive proof than the order itself. Miss Modrall further testified that it was her duty to send out notices to the applicant of the orders of the Railroad Commission, either granting or denying permits, and that she made a notation in the corner of the written recommendation of J. T. Elliott (deputy supervisor who conducted the hearing), as follows: "6–21–34," and that this notation was made by her to indicate the date she mailed to the applicant the copies of the order denying permit for drilling the proposed wells Nos. 6, 7, and 8. The parties were represented by their attorneys at the hearing on May 1st.

The appellees contend that the court should find that Elliott prepared an order to accompany his recommendation, and that such order bore date of May 7, 1934, and say: "Apparently this was the order of date May 7, 1934 which two members of the Railroad Commission inadvertently and unintentionally signed at sometime subsequent to June 29, 1934." This seems improbable. The recommendation made by Elliott was dated May 4, 1934, and recommended that the commission sign the "attached order" denying the application. The appellants suggest that evidently the date of the order was left blank by Elliott because if he had dated it, it would have been the same as that borne by his memorandum. There is no evidence that the members of the commission "inadvertently or unintentionally signed" the May 7th order subsequent to June 29, 1934, as contended by appellees. The record shows that Miss Modrall, the permit clerk, brought the bound volume containing the original signed orders of the Railroad Commission and positively testified to having made the notation "6–21–34" on the memorandum which she said she made when she mailed the copies of the order to the applicant.

■ Brownlee alone questions these facts. He said that on June 29th he went into the office of Commissioner Smith, who looked through some instruments on his desk and came to one and started to sign it and then said to Brownlee: "This order is not granting you a permit to drill these wells. This order is denying you a permit." That Smith then ordered that the commission's file in the case be brought to him, and looked over a number of papers in it. Brownlee said that the order at that time denying them the permit had not been signed and was on his desk; that Commissioner Smith then discussed the matter with Commissioners Thompson and Terrell, and they ordered the preparation of a new order granting the permit, which was signed. On cross-examination Brownlee testified as follows:

"Q. Now the only way you know the previous order had not been signed was you saw a copy of it there that had not been signed? A. I saw a copy there that had not been signed.

"Q. But you didn't ask Miss Modrall whether or not she had sent a copy of the order to the plaintiff denying the permit on the 21st of June as she said? A. I knew it had not been signed and I knew why, but you won't let me tell the conversation up there."

We think his testimony was hearsay. Miss Modrall had testified without contradiction that several duplicate copies of the order were prepared, and that the signed orders are placed in a bound book. The only reasonable inference from this testimony is that the original order denying the permit was signed on May 7th and properly

filed with other original orders, and that when Commissioner Smith sent for the file in the case on June 29th the original order was not there, but he found one or more unsigned carbon copies. It would seem that Brownlee never saw the record book containing original orders, and his testimony is negative in its nature and subject to all the infirmities inherent in such evidence. 17 Tex.Jur. 905, § 408.

It has been held that the jurisdiction of the commission ends when it enters an order denying an application of this character, and that its further jurisdiction cannot be invoked except upon notice and hearing, as to which the record is silent. Sun Oil Co. v. Gillespie (Tex.Civ.App.) 85 S.W.(2d) 652; Rabbit Creek Oil Co. v. Shell Petroleum Corporation (Tex.Civ.App.) 66 S.W.(2d) 737. We are convinced that the evidence is sufficient to establish that a duly signed order was entered denying the New Process Production Company's application. As suggested by appellants, the Railroad Commission is a very busy arm of our state government, and doubtless overlooked the fact that an order had been entered denying the application. Since this ended its jurisdiction, no subsequent order could be entered without a hearing and notice to all lease owners and a formal order entered setting aside the prior order. It is not claimed that any notice was given to any one prior to the time the commissioners signed the second order, nor was there any hearing except the original hearing on May 1st, after which the order denying the issuance of a permit was entered.

The appellees interposed the defense of laches. We think Judge Baugh, in the case of Joe Edgar v. Stanolind Oil & Gas Co., et al. (Tex.Civ.App.) 90 S.W.(2d) 656, has settled this question adversely to appellees when he said that: "The issue here presented is whether or not the conservation laws of the state are being contravened. That is a matter in which the public is concerned; and private parties cannot by conduct and agreement between themselves, whether by estoppel or otherwise, vitiate the conservation laws, nor obstruct their proper enforcement."

As suggested by appellants, laches with regard to an order by the Railroad Commission cannot be predicated on a void order. The rule that the enforcement of a right may be barred by laches is an application of the maxims, "Vigilantibus, non dormientibus, subvenieunt leges," and, "He who comes into equity must come with clean hands"; but the doctrine cannot be invoked to defeat justice and it will be applied only where the enforcement of the right asserted would work injustice.

Since the record shows that a valid order was originally entered on May 8th, and since the appellee New Process Production Company is presumed to know that the order was entered, it would be gross injustice to enforce the rule in defense of its action under a void order subsequently made.

There is another maxim of equity applicable to this situation, and that is that, "Equity follows the law." In the application of this maxim it is held that equity will not impart validity to an instrument which is void at law. Colleps v. George W. Smith Lumber Co. (Tex.Civ. App.) 185 S.W. 1043; Reed v. Reeves' Adm'r; 13 Bush.(Ky.) 447; Dickinson v. Glenney, 27 Conn. 104; Rogers v. Higgins, 48 Ill. 211.

It is contended that because the Sun Oil Company received no notice of the first hearing that the order entered upon the recommendation of Elliott is invalid. The testimony bearing upon the relation and business connections between the General Crude Oil Company and the Sun Oil Company is meager, but is sufficient, we think, to show that they were tenants in common of the 50-acre tract. There being no conflict of interest as to these two companies, and since the General Crude Oil Company was apparently acting as the tenant of its copartner, the Sun Oil Company, notice to either was notice to both.

But aside from these matters, it is our opinion that the evidence is insufficient to sustain the court's judgment. In fact, it preponderates and is almost conclusive in favor of the appellants. The New Process Production Company introduced no testimony whatever to show that the three additional wells were necessary to prevent drainage and confiscation of appellees' property, or would, if drilled, result in underground waste and increased fire hazard. The uncontradicted testimony is to the contrary. No evidence was introduced by the New Process Production Company at the hearing that tended to show that their lease was suffering drainage from adjacent wells. On the other hand, the testimony intro-

duced by appellants tended to show that with the five wells already on the 8.61 acres, that company was getting more than its pro rata share of oil from the lease considered as a whole.

It is unnecessary to consider the remaining contentions in detail, because we think the second order is absolutely void, and will require a reversal of the judgment. In view of the fact that neither Elliott nor any of the commissioners testified, that hearsay was heard upon the main issue, and the further fact that the evidence is unsatisfactory with reference to the amount and extent of drainage by each of the lease holders, we have concluded that a proper disposition to make of the case is to reverse the judgment and remand the case for another trial, and it is accordingly so ordered.