MAGNOLIA PETROLEUM CO. v. BLANK-
ENSHIP et al.*

No. 7671.

Circuit Court of Appeals, Fifth Circuit.

July 7, 1936.

Rehearing Denied Aug. 18, 1936.

*Writ of certiorari denied 57 S. Ct. 234, 81 L. Ed. —.

Russell Surles, of Dallas, Tex., for appellant.

W. Edward Lee, of Longview, Tex., J. B. Dudley, of Oklahoma City, Okl., and Wm. McCraw, W. J. Holt, and Harry S. Pollard, all of Austin, Tex., for appellees.

Before FOSTER and SIBLEY, Circuit Judges, and STRUM, District Judge.

SIBLEY, Circuit Judge.

Magnolia Petroleum Company, owning an oil lease on 81 acres of land in Gregg county, Tex., on March 7, 1934, brought suit in a state court for a permanent injunction against G. T. Blankenship to stop him from operating an oil well on an adjoining tract of about one-half acre, and against the Railroad Commission of Texas from issuing him a certificate of compliance with the Texas conservation statutes. The suit was removed to the federal court and on final hearing injunctions were denied. This appeal questions that judgment.

The main facts are undisputed. The owners who leased the 81 acres on which Magnolia Petroleum Company has several producing wells made another lease on a narrow strip of about 2 acres adjoining on the west. A conflicting lease was asserted, resulting in litigation which in the summer of 1933 was compromised, the strip being cut into 4 lots of about ½ acre each, of which appellee Blankenship got the southernmost. Permits were granted by the Railroad Commission to the owners of 2 of these lots to sink a well on each. Blankenship applied for a permit, but it was denied. He entered upon litigation with the Railroad Commission in which Magnolia Petroleum Company intervened, and he obtained temporary injunctions against interference under the protection of which he sank a well on his lot and then dismissed his litigation. The Railroad Commission and the state of Texas brought suit against him for a thousand dollar penalty for sinking the well without a permit and collected it; but by cross-action Blankenship got a judgment that the Railroad Commission do issue him a certificate authorizing him to operate his well. No appeal was taken, but it is contended by Magnolia Petroleum Company that the court had not jurisdiction to make the latter order. In the present suit the Railroad Commission joins Blankenship in taking the position that the penalty which was paid condones any wrong to the public that was done by his drilling without a permit. The three wells on the three half acre lots tend to drain the oil from adjoining lands where the wells are not so closely spaced. The court, however, found that Magnolia's wells which had been running for two years before Blankenship's was put down had drawn more oil from Blankenship's land than his well was likely to draw from Magnolia's land for a long time to come, and that it was inequitable as between Magnolia and Blankenship to enjoin operation of his well while the other wells continued to produce.

In Texas oil in place in the soil is capable of ownership and conveyance, Stephens County v. Mid-Kansas Oil & Gas Co., 113 Tex. 160, 254 S.W. 290, 29 A.L.R. 566; Waggoner Estate v. Sigler Oil Co., 118 Tex. 509, 19 S.W.(2d) 27; but the ownership is qualified by what is termed the right of capture by adjoining landowners. Just as percolating waters are not capable of absolute ownership, so that if an adjoiner by sinking a well withdraws such waters from a neighbor, the neighbor has no right of action, Houston & T. C. Ry. Co. v. East, 98 Tex. 146, 81 S.W. 279, 66 L.R.A. 738, 107 Am.St.Rep. 620, 4 Ann.Cas. 827; so also an owner of oil in place has been held to have no right of action against an ad-

joiner who by sinking wells on his own land drains away the former's oil, his remedy being to drill offsetting wells so as to get his full share. Hermann v. Thomas (Tex.Civ.App.) 143 S.W. 195; Prairie Oil & Gas Co. v. State (Tex.Com.App.) 231 S.W. 1088. The competition to produce oil thus set up resulted naturally in waste. Pursuant to a constitutional amendment, more comprehensive statutes looking to the conservation of the Texas gas and oil reserves and to the prevention of waste began to be enacted in 1919, the administration of them being committed to the Railroad Commission. By article 6023 of the Rev.Stats. of 1925 jurisdiction is given the commission over all persons, associations, and corporations owning or engaged in drilling or operating oil and gas wells in Texas, with authority to make all necessary rules to secure the objects of the statutes to be enforced by the Attorney General by injunction or other adequate remedy. Article 6024 gives the commission power both to institute suits and to hear complaints. Article 6029, as enlarged by acts passed in 1931 (1st Called Sess., c. 26, § 15) and 1932 (4th Called Sess., c. 2, § 7) directs the commission to make and enforce regulations: "(4) To require wells to be drilled and operated in such manner as to prevent injury to adjoining property. * * * (8) It shall do all things necessary for the conservation of crude petroleum oil and natural gas and to prevent the waste thereof, and shall make and enforce such rules, regulations or orders as may be necessary to that end." Article 6049c, § 7, as amended (1st Called Sess., c. 26) and 1932 (4th Called Sess., c. 2, § 5) provides: "Upon the initiative of the Commission, or upon the verified complaint of any party producing * * * crude petroleum oil * * * in this State that waste * * * is taking place in this State, or is reasonably imminent, the Commission may hold a hearing. * * * The Commission shall make such rule, regulation or order as in its judgment is reasonably required to correct, prevent or lessen such waste. In the event the rule provides for limitation or fixing production of crude petroleum oil in any common pool or portion thereof the commission shall distribute, prorate, or otherwise allocate the allowable production among the various producers on a reasonable basis." By its rule 37 the commission has prohibited the drilling of a well at a distance of less than 660 feet from another well, provided that in order to prevent waste or to protect vested rights exceptional permits, especially on smaller tracts, can be granted on hearing. It has also limited the allowable production from wells in the East Texas field. These changes in the law have not abolished the ownership of oil in place nor the right of capture without liability to adjoiners. But by thus limiting the sinking of new wells and the production from old ones the right to capture oil has been modified and protection against drainage by offset wells has been impaired, so that adjustments are rendered necessary and new remedies proper. The provisions above referred to were recently considered by the Supreme Court of Texas in Brown v. Humble Oil Co., 83 S.W.(2d) 935, 944, 99 A.L.R. 1107, Id., 87 S.W.(2d) 1069, 101 A.L.R. 1393, and held valid. Rule 37 was explained with reference to the fundamental property rights in oil and the exceptional permits to drill on small tracts. It was said: "Each person still owns the oil and gas in place under his land, and each still has the right to possession, use, enjoyment, and ownership of the oil and gas produced through wells located on his land, regardless of its origin. The primary rule of ownership is still operative. * * * Also, conditions may arise where it would be proper, right, and just to permit tracts to be subdivided and such subdivisions drilled after the adoption of the rule; but in all such instances it is the duty of the commission to adjust the allowable, based on the potential production, so as to give the owner of such smaller tract only his just proportion of the oil and gas. By this method each person will be entitled to recover a quantity of oil and gas substantially equivalent in amount to the recoverable oil and gas under his land. * * * In this connection, we hold that since the Legislature has bestowed the power of administering the oil and gas business of this state on the Railroad Commission, every person has the right to apply to that tribunal for relief as a matter of right, and not as a matter of grace. The commission, in order to prevent waste, has the power to limit the rate of flow in the same way that it has the power to regulate spacing."

Blankenship having been refused a permit for a well on his small tract would have been unable to save any of his oil unless by some arrangement, voluntary or forced, he could share in the oil produced from nearby wells. But he now has a

well and is at peace with the commission and the state. The question is, What are the private obligations between him and his neighbor Magnolia? Before the conservation statutes, each could have put on his own land all the wells desired without accountability to the other. The law through the commission has stopped that. But an owner unable to protect himself from drainage by an offset well is given the right to petition the commission and the commission has power and a consequent duty to "prevent injury to adjoining property," and touching a common pool or portion of it to "distribute, prorate or otherwise allocate the allowable production among the various producers." This we think is the remedy which Magnolia should seek if it believes that Blankenship is getting more than his fair part of the oil. It is certainly not equitable for Magnolia to have a perpetual injunction against Blankenship getting any while Magnolia continues to drain it all away. The evidence shows that there are difficulties about adjustment by means of suits for damages, if indeed they have become an available remedy under the conservation régime. We do not think the statute in the margin [1] relied on by Magnolia as vesting in it a right of action gives it any right to an injunction. The first sentence is negative, declaring that the conservation laws and proceedings under them shall not impair any cause of action for damages or other relief which one producer may have against another. It purports to give no new cause of action. The second sentence is affirmative, and gives a property owner or producer who is damaged by another by violating the acts a right to sue, but only to "recover such damages, and have such other relief as he may be entitled to in law or in equity." The general principles of law and equity thus remain the standards, and an injunction is not to be had when it is inequitable. Magnolia is not given an authority to enforce the orders of the commission. We are of opinion that Blankenship's well, whether lawfully put down or not, ought not to be permanently closed at the instance of Magnolia, and that Magnolia's preventive remedy if Blankenship is producing too much oil is to apply to the commission for a rule of proration among all the competing wells.

Judgment affirmed.

On Motions for Rehearing.

PER CURIAM.

Earnest motions for rehearing have been filed by appellant Magnolia Petroleum Company and by appellee Railroad Commission of Texas. The commission has but one pleading in the record, its answer in which it squarely takes the position that Blankenship by paying the $1,000 penalty became entitled to produce oil and gas from his well just as though he had originally got a permit to drill it, and that the judgment of the district court of Gregg county requiring the issuance to him of a certificate of compliance was valid and binding. The commission filed nothing to the contrary in this court. It cannot by a motion for rehearing repudiate its pleadings and join in the contentions of the appellant Magnolia Petroleum Company. See Pullman Co. v. Bullard (C.C.A.) 44 F.(2d) 347.

But we have not held, as both motions assume, that the Gregg county judgment is conclusive, or that it correctly decided that payment of the penalty for drilling without a permit necessarily rendered Blankenship's well a lawful one. Those are questions of Texas law which we have not found it necessary to decide. We say that the status of Blankenship's well being at least doubtful, it is not for Magnolia, owning competing wells, to wholly stop its operation by permanent injunction. Else other well owners could attempt the same thing, and even by a bill in Blankenship's home state of Oklahoma, since injunction operates in

---

[1] Art. 6049c: "Sec. 13. Nothing herein contained or authorized, and no suit by or against the Commission, and no penalties imposed upon or claimed against any party violating any Statute of this State, or any rule, regulation or order of the Commission, shall impair or abridge or delay any cause of action for damages, or other relief, any owner of any land or any producer of crude petroleum oil or natural gas, or any other party at interest, may have or assert against any party violating any rule, regulation or order of the Commission, or any judgment herein mentioned. Any party owning any interest in any property or production which may be damaged by any other party violating this Act or any other Statute of this State prohibiting waste or violating any valid rule, regulation or order of the Commission, may sue for and recover such damages, and have such other relief as he may be entitled to in law or in equity." (Vernon's Ann.Civ.St.Tex. art. 6049c, § 13.)

personam. Conflicting results might easily be reached. The statutes of Texas referred to in our previous opinion expressly put the duty of enforcing as well as of making the rules and regulations upon the commission, and direct the Attorney General to enforce them by injunction or other appropriate remedy. In such enforcement proceedings as well as in the statutory quasi appeals to the court of Travis county from the making of rules and regulations, the commission represents the public and the result may establish status as against the world. See Magnolia Petroleum Co. v. Edgar (Tex.Civ.App.) 62 S.W.(2d) 359. Magnolia Petroleum Company is given no authority to enforce the commission's rules and orders, but can only assert its own private rights. We hold that it has under the circumstances of this case, which include the commission's refusal to question Blankenship's right to operate his well, no equity to a permanent injunction, but that if its oil lands are being unduly drained by Blankenship's well and by the other two wells on the same two-acre tract which before subdivision in 1933 was a unit of less than twenty acres, the legal and sufficient remedy is to obtain a proration adjustment order from the commission. When subsequent to the promulgation of rule 37 this small tract was subdivided by its owners for partition, we recognize that, although each owner acquired title to the oil under his subdivision, he had no absolute right to a well. The tract remained a single production unit to be handled under rule 37, which in terms applies to tracts held either by a single owner or by several owners. We suppose that if the commission denies to any subdivision of such tract its own well that it can make some just apportionment of the oil produced on those subdivisions which are allowed wells; it being implied, if not expressed, in the act of subdivision that owners not allowed a well are not wholly to lose their oil. Blankenship would have been in this situation, but he now has a well in fact, sunk at great expense and under color of court sanction. It is for the commission on a hearing for a proration order to say what production should be allowed to the whole two-acre tract as against Magnolia and other adjoiners, and within that tract what proportion if any of the production allowed to it should be awarded to Blankenship's well as against the other two wells previously on the tract. If found material, the effect of the payment of the $1,000 penalty by Blankenship and the force of the judgment of the Gregg county court may be then considered. Nothing in the disposition we make of this case would prevent.

We are referred to several recent decisions of the Texas courts in which injunctions against sinking wells without proper permit were awarded or recognized as proper: Magnolia Petroleum Co. v. Railroad Commission (Tex.Civ.App.) 90 S.W.(2d) 659, affirmed and rendered by the Supreme Court 96 S.W.(2d) 273; Stanolind Oil & Gas Co. v. Railroad Commission (Tex.Civ. App.) 92 S.W.(2d) 1057; Empire Gas & Fuel Co. v. Railroad Commission (Tex. Civ.App.) 94 S.W.(2d) 1240. These were all suits in Travis county brought under the statute directly to set aside orders of the commission allowing or refusing permits to sink wells. They do not deal with completed wells, or with the private right of an adjoiner to stop the operation of such. Our view that the adjoiner ought in a case like this to have recourse to the commission rather than to have a permanent injunction is apparently approved in Stanolind Oil & Gas Co. v. Railroad Commission and W. L. Sartain, 96 S.W.(2d) 664, where our opinion is cited.

The motions for rehearing are denied.