NUMBER 13-99-757-CV
COURT OF APPEALS
THIRTEENTH DISTRICT OF TEXAS
CORPUS CHRISTI – EDINBURG

 
 
EMERALD OIL AND GAS, L.C. ON BEHALF
OF ITS WORKING INTEREST OWNER
SAGLIO PARTNERSHIP LTD.,                                                  Appellants,

v.

EXXON CORPORATION AND EXXON TEXAS, INC., 
AS SUCCESSOR IN INTEREST TO HUMBLE
OIL AND REFINING CO.,
Appellees.



On appeal from the 135th District Court
of Refugio County, Texas.




                                                 O P I N I O N

       Before Chief Justice Valdez and Justices Hinojosa and Castillo

                             Opinion by Chief Justice Valdez
          Emerald Oil & Gas, L.C. (“Emerald”) sued Exxon Corp. and Exxon Texas, Inc., as
successor in interest to Humble Oil & Refining Co. (“Exxon”), for wrongful conduct in
plugging and abandoning oil and gas wells in the Mary Ellen O’Connor Field near Refugio,
Texas. Emerald, who held mineral leases on the wells following Exxon, alleged that Exxon
intentionally sabotaged the wells and misrepresented the status of the wells in public filings
made with the Texas Railroad Commission. Specifically, Emerald alleged that Exxon cut
casing without pulling or attempting to pull it, left non-drillable material in wellbores, filed
false W-3 plugging reports with the Texas Railroad Commission, pumped tank bottoms and
other pollutants into producing or disposal zones, and plugged and abandoned the
wellbores in such a manner as to make re-entry difficult if not impossible. The trial court
granted a partial summary judgment for Exxon on Emerald’s statutory causes of action
against Exxon. This judgment was severed, and Emerald appeals. We reverse and
remand.
 Background
           As an initial matter, we note that Exxon objected to the statement of facts found in
Emerald’s brief on grounds that Emerald merely copied paragraphs of its petition into its
brief. Accordingly, Exxon offered its own “brief statement of the undisputed facts.” Exxon’s
objection fails to consider and apply the correct standard of review. In fact, we assume
that all allegations and facts in the non-movant’s pleadings are true in determining whether
a cause of action exists. Perry v. S.N., 973 S.W.2d 301, 303 (Tex. 1998). Accordingly, the
following statement of facts is premised on the allegations and facts contained in Emerald’s
pleadings. 
          Exxon leased the mineral interests on several thousand acres, the Mary Ellen
O’Connor Field, near Refugio. Exxon’s interest in the property spanned decades and was
the result of several different leases. The oil production on the property dwindled, and
Exxon attempted to renegotiate the fifty percent royalty it paid to the owners of the mineral
interests. The fifty percent royalty was greater than what Exxon paid to neighboring
landowners. Unsuccessful in its attempts to reduce the royalty, Exxon gradually plugged
and abandoned the wells on the property. In so doing, Exxon engaged in a deliberate
pattern of sabotaging the wells to prevent reentry. Exxon’s actions resulted in waste,
pollution, economic loss, and loss of useful wells. Exxon further misrepresented the status
of the wells and the procedures undertaken in Exxon’s public filings with the Texas
Railroad Commission.
          After Exxon’s lease expired, Emerald Oil & Gas, acting on behalf of its working
interest owner, Saglio Partnership, Ltd., obtained the lease of the mineral interests on the
property. Emerald and the intervening royalty interest owners subsequently brought suit
against Exxon alleging wrongful conduct in the development and abandonment of the oil
and gas field. Emerald bases some of its causes of action against Exxon on the fact that,
in determining whether to obtain the lease on the wells, Emerald relied on Exxon’s public
filings with the Texas Railroad Commission. Several of Emerald’s causes of action were
based on the Texas Natural Resources Code, specifically including, inter alia, section
89.011, governing the duty of an operator, section 85.045, prohibiting waste in the
production, storage, or transportation of oil and gas, and section 85.321, providing a suit
for damages. See Tex. Nat. Res. Code Ann. § 89.011 (Vernon Supp. 2004-05), § 89.011
(Vernon 2001); § 85.321 (Vernon 2001).
          Exxon filed an amended motion for partial summary judgment against Emerald and
the intervenors under rule 166a(c) governing traditional summary judgments. See Tex. R.
Civ. P. 166a(c). It argued that it was entitled to summary judgment “as a matter of law”
because: (1) a lessee who has elected to surrender its lease has no obligation to potential
future lessees or operators; (2) there is no private cause of action for breach of a
regulatory law duty to plug a well in a particular fashion; (3) there is no private cause of
action for breach of any regulatory law duty not to commit waste; (4) the facts alleged by
Emerald and the intervenors do not give rise to a claim for tortious interference with
economic opportunity; and (5), in the alternative only, if the intervenors have any claim
against Exxon for failure to properly plug the wells, that cause of action sounds only in
contract, not in tort. 
           The trial court granted Exxon’s motion, in part, by ruling that Exxon:
owed no duties under Tex. Nat. Res. Code §§89.011, 85.045, 85.046,
85.321, and 16 Tex. Admin. Code §3.14(c)(1) (1998) (Tex. R.R. Comm’n,
Plugging) or their respective prior versions, to potential future working
interest owners, such as Emerald Oil & Gas L.C. acting on behalf of its
working interest owner, Saglio Partnership, Ltd., that would give rise to a
cause of action by Emerald Oil & Gas L.C., acting on the behalf of its working
interest owner Saglio Partnership Ltd., against Defendants for negligence per
se; for breach of a regulatory law duty to properly plug a well; or for breach
of a regulatory law duty not to commit waste. 

See Tex. Nat. Res. Code Ann. §§ 89.011 (Vernon Supp. 2004-05), 85.045 (Vernon 2001),
85.046 (Vernon 2001), 85.321 (Vernon 2001), 16 Tex. Admin. Code §3.14. The trial court’s
order further denied the motion for summary judgment as to intervenors’ claims for tortious
interference with an economic opportunity. By separate order, the trial court severed the
causes of action on which summary judgment was granted. This appeal ensued from the
severed cause. 
          Emerald raises three issues on appeal: (1) summary judgment was improper
because Exxon did not establish as a matter of law that it owed no duties to Emerald under
sections 89.011, 85.045, 85.046, and 85.321 of the Texas Natural Resources Code, or
volume 16, section 3.14 of the Texas Administrative Code that would give rise to a cause
of action for negligence per se; (2) summary judgment was improper because Exxon did
not establish as a matter of law that Exxon owed no duty to Emerald under the foregoing
sections that would give rise to a cause of action for breach of regulatory duty to properly
plug and abandon; and (3) summary judgment was improper because Exxon did not
establish as a matter of law that Exxon owed no duty to Emerald under the foregoing
sections that would give rise to a cause of action for breach of regulatory duty not to
commit waste. 
Standard of Review
          We review the summary judgment de novo. See FM Props. Operating Co. v. City
of Austin, 22 S.W.3d 868, 872 (Tex. 2000). When reviewing a summary judgment, we take
as true all evidence favorable to the nonmovant, and we indulge every reasonable
inference and resolve any doubts in the nonmovant's favor. Southwestern Elec. Power Co.
v. Grant, 73 S.W.3d 211, 215 (Tex. 2002); Science Spectrum, Inc. v. Martinez, 941 S.W.2d
910, 911 (Tex. 1997). Under Texas Rule of Civil Procedure 166a(c), the party moving for
summary judgment bears the burden to show that no genuine issue of material fact exists
and that it is entitled to judgment as a matter of law. Haase v. Glazner, 62 S.W.3d 795, 797
(Tex. 2001); Rhone-Poulenc, Inc. v. Steel, 997 S.W.2d 217, 223 (Tex. 1999). We affirm
the summary judgment if any of the theories presented to the trial court and preserved for
appellate review are meritorious. Cincinnati Life Ins. Co. v. Cates, 927 S.W.2d 623, 626
(Tex. 1996); Carr v. Brasher, 776 S.W.2d 567, 569 (Tex. 1989).
          The movant may file a motion for summary judgment that, instead of proving or
disproving facts, shows the nonmovant has no viable cause of action or defense based on
the nonmovant’s pleadings. Higbie Roth Constr. Co. v. Houston Shell & Concrete, 1
S.W.3d 808, 811 (Tex. App.–Houston [1st Dist.] 1999, pet. denied); see, e.g. Nat’l Un. Fire
Ins. Co. v. Merchants Fast Motor Lines, Inc., 939 S.W.2d 139, 141 (Tex. 1997) (per
curiam) (no duty to defend insurance claim based on pleadings and terms of policy); Trinity
River Auth. v. URS Consultants, Inc., 889 S.W.2d 259, 261 (Tex. 1994) (petition showed
statute of repose had run); Helena Lab. Corp. v. Snyder, 886 S.W.2d 767, 768-69 (Tex.
1994) (per curiam) (no cause of action for negligent interference with family relationship).


 
          When reviewing a motion for summary judgment based on the nonmovant’s
pleadings, the trial court must assume that all allegations and facts in the nonmovant’s
pleadings are true in determining whether a cause of action exists. Perry, 973 S.W.2d at
303; Natividad v. Alexsis, Inc., 875 S.W.2d 695, 699 (Tex. 1994); Carreiro v. Wiley, 976
S.W.2d 829, 831 (Tex. App.–Houston [1st Dist.] 1998, pet. denied). The court must
indulge all inferences in the nonmovant’s pleadings in the light most favorable to the
nonmovant. Science Spectrum, Inc., 941 S.W.2d at 911. Further, the court must
determine that any defects in the pleadings are not curable by amendment. In re B.I.V.,
870 S.W.2d 12, 13-14 (Tex. 1994) (per curiam).
Analysis
          We review matters of statutory construction de novo. City of San Antonio v. City of
Boerne, 111 S.W.3d 22, 25 (Tex. 2003); City of Garland v. Dallas Morning News, 22
S.W.3d 351, 357 (Tex. 2000). In construing a statute, our primary objective is to determine
and give effect to the Legislature's intent. Tex. Dep’t. of Transp. v. City of Sunset Valley,
146 S.W.3d 637, 642 (Tex. 2004); City of San Antonio, 111 S.W.3d at 25; State v.
Gonzalez, 82 S.W.3d 322, 327 (Tex. 2002); see Tex. Gov't Code Ann. § 312.005 (Vernon
1998). In discerning that intent, we look first to the plain and common meaning of the
statute's words. Gonzalez, 82 S.W.2d at 327. We determine legislative intent from the
entire act and not just isolated portions of the act. City of Sunset Valley, 146 S.W.3d at
642; City of San Antonio, 111 S.W.3d at 25. If the statutory language is unambiguous, we
must interpret it according to its terms, giving meaning to the language consistent with
other provisions in the statute. City of Sunset Valley, 146 S.W.3d at 642. We also
consider the objective the statute seeks to obtain and the consequences of a particular
construction. Id.; see Tex. Gov’t Code Ann. § 311.023(3),(5) (Vernon 1998). With these
principles in mind, we now turn to the parties' arguments.
          Although Exxon argues otherwise, section 85.321 of the Texas Natural Resources
Code provides a basis for Emerald’s causes of action against Exxon. Section 85.321 of
the code states that: 
A party who owns an interest in property or production that may be damaged
by another party violating the provisions of this chapter that were formerly a
part of Chapter 26, Acts of the 42nd Legislature, 1st Called Session, 1931,
as amended, or another law of this state prohibiting waste or a valid rule or
order of the commission may sue for and recover damages and have any
other relief to which he may be entitled at law or in equity. Provided,
however, that in any action brought under this section or otherwise, alleging
waste to have been caused by an act or omission of a lease owner or
operator, it shall be a defense that the lease owner or operator was acting
as a reasonably prudent operator would act under the same or similar facts
and circumstances. 
 
Tex. Nat. Res. Code Ann. § 85.321 (Vernon 2001). This language is clear and
unambiguous, and we will interpret it as written. This section expressly grants a cause of
action to Emerald, a party who is alleging that its interest in production was damaged by
Exxon’s violations of the code and other applicable laws. This reading of the statute is in
accord with other cases referencing the effect of section 85.321. See HECI Exploration
Co. v. Neel, 982 S.W.2d 881, 890 (Tex. 1998) (“When a mineral or royalty interest owner
is damaged by a violation of the conservation laws of this state or a Railroad Commission
rule or order, section 85.321 of the Texas Natural Resources Code . . . expressly provides
for a damage suit against the offending operator.”); In re Apache Corp., 61 S.W.3d 432,
435 (Tex. App.–Amarillo 2001, orig. proceeding) (Through section 85.321, “the legislature
unmistakably declared its intent to allow those owning an interest in realty who have
suffered injury due to a violation of some rule or order of the TRC to sue for and recover
damages and other relief.”); H.G. Sledge, Inc. v. Prospective Inv. & Trading Co., 36 S.W.3d
597, 606 n.10 (Tex. App.–Austin 2000, pet. denied) (acknowledging that section 85.321
“provides jurisdiction for suits for damages”); see also Turnbow v. Lamb, 95 F.2d 29, 31
(5th Cir. 1938) (construing predecessor statute). 
          Contrary to these authorities, Exxon relies on Magnolia Petroleum Co. v.
Blankenship, 85 F.2d 553 (5th Cir. 1936), for the proposition that the predecessor to
section 85.321 “did not grant a new, private cause of action for damages or other relief not
previously available to a property owner or producer.” See id. at 556. We conclude that
such reliance is misplaced, however, because Magnolia concerns the enforcement of a
Railroad Commission order rather than a matter of civil litigation between private parties. 
See id. 
          In reaching this determination, we note that other provisions of the natural resources
code also recognize private causes of action. See, e.g., Tex. Nat. Res. Code Ann. §
111.095 (Vernon 2001); Id. § 134.182 (Vernon 2001). Moreover, such an interpretation
is consistent with the overall legislative intent to prevent waste and preserve natural
resources. See, e.g., Tex. Nat. Res. Code Ann. § 89.001 (Vernon 2001) (stating that the
“conservation and development of all natural resources of this state are declared to be a
public right and duty”). In this regard, we note that the preservation of our natural
resources is an issue of constitutional dimension. See Tex. Const. art. 16, § 59 (stating
that “the preservation and conservation of all such natural resources of the State are each
and all hereby declared public rights and duties; and the Legislature shall pass all such
laws as may be appropriate thereto”).
          Exxon contends that the recognition of a private cause of action is unnecessary
given that the Railroad Commission has the power to enforce the provisions of the natural
resources code and statewide rules. However, the Legislature has directly addressed this
argument. Section 85.322 of the code specifically states that none of the provisions of
chapter 85, and:
no suit by or against the commission, and no penalties imposed on or
claimed against any party shall impair or abridge or delay a cause of action
for damages or other relief that an owner of land or a producer of oil or gas,
or any other party at interest, may have or assert against any party violating
any rule or order of the commission. . . .

Tex. Nat. Res. Code Ann. § 85.322 (Vernon 2001). 
          Exxon argues that recognizing a duty from Exxon to Emerald, a future lessee, 
would “inflict an undue burden on mineral lessees.” However, the statute merely requires
operators to follow the conservation laws of the state of Texas. Moreover, section 85.321
by its own terms provides a defense for lessees where the “lease owner or operator was
acting as a reasonably prudent operator would act under the same or similar facts and
circumstances.” Id. § 85.321 (Vernon 2001). The statute further limits the liability of
violators for “damages that may occur as a result of acts done or omitted to be done by
them or each of them in a good faith effort to carry out this chapter.” Id. § 89.045 (Vernon
2001). 
          Exxon further argues that it owes no duty to Emerald given that Emerald owned no
rights in the wells at the time of the alleged tortious acts. We see nothing in the statute’s
language or in its underlying purposes to support a conclusion that the Legislature intended
to limit the statute’s application regarding when the injured party acquired its interest or
when the statutory violations occurred. The section contains no limiting language
regarding the time of ownership or time of violation. Accordingly, we conclude that
Emerald may assert a cause of action against Exxon.
          According to Emerald’s pleadings, which are presumed true for purposes of this
appeal, Exxon intentionally sabotaged wells and misrepresented the status of the wells in
filings with the Railroad Commission. We conclude that Emerald’s pleadings sufficiently
set forth facts, which, if proven, would give rise to legally cognizable causes of action
against Exxon. Accordingly, we reverse the summary judgment and remand this matter
to the trial court for further proceedings consistent with this opinion.
          
           

                                                                                                                                 
                                                                                      Rogelio Valdez,
                                                                                      Chief Justice

 

Opinion delivered and filed
this 27th day of January, 2005.