IN THE SUPREME COURT OF TEXAS








IN THE SUPREME COURT OF TEXAS
 
════════════
No. 05-0729
════════════
 
Exxon Corporation and Exxon 
Texas, Inc., Petitioners,
 
v.
 
Emerald Oil & Gas 
Company, L.C., Respondent
 
════════════════════════════════════════════════════
On Petition for Review from the
Court of Appeals for the Thirteenth District of 
Texas
════════════════════════════════════════════════════
 
 
Argued February 
13, 2007
 
 
            
Justice Wainwright delivered the opinion of the 
Court.
            
Justice O’Neill did not participate in the 
decision.
            
In this oil and gas dispute, we determine whether section 85.321 of the 
Texas Natural Resources Code allows a subsequent mineral lessee to maintain a 
cause of action against a prior lessee for damages to the subsequent lessee’s 
interest. We hold that section 85.321 creates a private cause of action that 
does not extend to subsequent lessees. Because the plaintiff in this case owned 
no interest in the mineral leases when the prior lessee allegedly damaged the 
interest, the plaintiff lacks standing to assert a cause of action under section 
85.321.[1] Accordingly, we reverse the court of 
appeals’ judgment. Today, we also issue our opinion in Exxon Corp. v. Miesch, 
the companion to this case. ___ S.W.3d ___ (Tex. 
2009).
I. Factual and Procedural 
Background
            
In the 1950s, Humble Oil & Refining Company (Humble) held mineral 
leases with Mary Ellen and Thomas James O’Connor on several thousand acres in 
Refugio County, Texas (O’Connor Tract). Exxon Texas, Inc. 
succeeded Humble’s interest in the leases. Under the 
leases, Exxon paid a fifty percent royalty, which was 
higher than the royalty Exxon paid on an adjoining tract. In the 1980s, Exxon 
unsuccessfully sought to renegotiate the royalty percentage with the royalty 
owners. Deciding that it was no longer sufficiently profitable to continue 
operating the O’Connor Tract, Exxon systematically plugged and abandoned the 
wells. In 1991, Exxon plugged and abandoned its last well on the 
tract.
            
In 1993, Emerald Oil & Gas Company, L.P. (Emerald) obtained leases 
for half of the O’Connor Tract and attempted to reenter the wells. Emerald 
encountered unexpected difficulties when it tried to reenter the wells. Emerald 
alleges that Exxon caused these difficulties by improperly plugging and 
intentionally sabotaging the wells by putting considerable quantities of metal, 
unidentifiable refuse, tank bottoms, and other environmental contaminants into 
the wells. In 1996, Emerald, on behalf of its working-interest owner, Saglio Partnership Ltd., sued Exxon on six claims: (1) 
breach of a statutory duty to properly plug a well, (2) breach of a statutory 
duty not to commit waste, (3) negligence per se, (4) tortious interference with economic opportunity, (5) fraud, 
and (6) negligent misrepresentation. The royalty owners[2] intervened, 
alleging the same claims.
            
Exxon moved for partial summary judgment against Emerald and the royalty 
owners on grounds that: (1) Exxon has no obligation to potential future lessees; 
(2) there is no private cause of action for breach of a statutory duty to plug a 
well in a particular way; (3) there is no private cause of action for breach of 
any statutory duty not to commit waste; and (4) the facts alleged do not give 
rise to a claim for tortious interference with 
economic opportunity; but (5) in the alternative, if the royalty owners have a claim against Exxon for 
failure to plug the wells properly, it sounds in contract only, not in 
tort.
            
The trial court granted portions of Exxon’s motion for partial summary 
judgment, concluding that under sections 85.045, 85.046, 85.321, and 89.011 of 
the Texas Natural Resources Code and Title 16 section 3.14(c)(1) of the Texas 
Administrative Code, Exxon owed no statutory duty to potential future lessees, 
including Emerald. Accordingly, the trial court granted partial summary judgment 
in Exxon’s favor on Emerald’s three statutory claims of (1) negligence per se, 
(2) breach of a statutory duty to plug a well properly, and (3) breach of a 
statutory duty not to commit waste. The trial court then severed those claims 
and proceeded to trial on Emerald’s three remaining claims against Exxon: fraud, 
negligent misrepresentation, and tortious 
interference. The court also denied Exxon’s motion for summary judgment on the 
royalty owners’ claims and tried those claims. Emerald filed an appeal 
challenging the trial court’s decision.
            
The court of appeals reversed and remanded Emerald’s three statutory 
claims to the trial court, holding that section 85.321 imposes a duty on current 
lessees to future lessees and thus provides a basis for a cause of action 
against Exxon. Exxon petitioned this Court for review. We now review the trial 
court’s summary judgment de novo. Provident Life & 
Accident Ins. Co. v. Knott, 128 S.W.3d 211, 215 (Tex. 2003). Our 
opinion in Exxon v. Miesch, also issued today, 
decides the appeal of claims that were tried. ___ S.W.3d ___ 
(Tex. 
2009).
II. Discussion
A. Private Cause of 
Action
            
Two of Emerald’s claims against Exxon invoke statutory duties: breach of 
a statutory duty to plug a well properly and breach of a statutory duty not to 
commit waste. Emerald’s pleadings cite section 85.321 of the 
Texas Natural Resources Code as the basis for its standing to bring the first 
claim and refers to other related provisions of the Code in support of 
standing to bring the second claim. Section 85.321, titled “Suit for Damages,” 
reads:
 
A party who owns an interest in property or production that 
may be damaged by another party violating the provisions of this chapter that 
were formerly a part of Chapter 26, Acts of the 42nd Legislature, 1st Called 
Session, 1931, as amended, or another law of this state prohibiting waste or a 
valid rule or order of the commission may sue for and recover damages and have 
any other relief to which he may be entitled at law or in equity. Provided, 
however, that in any action brought under this section or otherwise, alleging 
waste to have been caused by an act or omission of a lease owner or operator, it 
shall be a defense that the lease owner or operator was acting as a reasonably 
prudent operator would act under the same or similar facts and 
circumstances.
 
Tex. Nat. Res. 
Code § 85.321. The court of appeals held that section 85.321 creates a 
private cause of action for damages resulting from statutory violations. We 
agree.
            
In construing statutes, this Court starts with the plain language of the 
statute. McIntyre v. Ramirez, 109 S.W.3d 741, 745 
(Tex. 
2003). The language of section 85.321 clearly creates a private cause of 
action. A party whose interest in property is damaged by another party violating 
provisions of a conservation law of this state or a Railroad Commission rule or 
order “may sue for and recover damages” and other relief to which the party may 
be entitled. Tex. Nat. 
Res. Code § 85.321. 
Section 85.321 also expressly provides a defense to civil actions for lease 
owners and operators acting as a reasonably prudent operator would act under the 
same or similar circumstances, adding more credence to the conclusion that 
section 85.321 creates a private cause of action. Id.
            
This Court previously reached the same conclusion. In HECI Exploration 
Co. v. Neel, royalty owners sued their lessee for 
failing to notify them that the lessee sued the operator on an adjoining tract 
whose overproduction of oil, in violation of Railroad Commission rules, damaged 
the common reservoir. 982 S.W.2d 881, 884 (Tex. 1998). The 
court of appeals held that the lessee violated an implied covenant to notify 
them of an intent to sue the offending operator. 
Id. at 
884–85. This Court held no such implied covenant exists because the 
lessee’s suit against the adjoining operator does not collaterally estop the royalty owners from suing separately under section 
85.321. Id. at 
890–91. “When a mineral or royalty interest owner is damaged by a 
violation of the conservation law of this state or a Railroad Commission rule or 
order, section 85.321 of the Texas Natural Resources Code also expressly 
provides for a damage suit against the offending operator.” Id.
            
Relying on Magnolia Petroleum Co. v. Blankenship, 85 F.2d 553, 556 
(5th Cir. 1936), Exxon urges the Court to disregard HECI and hold that 
section 85.321’s predecessor, article 6049c, does not create a private cause of 
action. Magnolia involved a dispute between two lessees producing out of 
a common reservoir. Id. at 
554. Magnolia produced oil from several wells on a tract of eighty-one 
acres while Blankenship had one well on half an acre. Blankenship had sunk his 
well without a permit. The Railroad Commission sued him for a $1,000 penalty. 
Blankenship countered for a certificate authorizing him to operate the well. The 
trial court authorized the penalty and also ordered the certificate of 
operation. Magnolia appealed the decision, contending that the trial court did 
not have authority to order the certificate of operation, and moved for an 
injunction against Blankenship under section 13 of article 6049c. Id. at 554, 
556. Interpreting the statute, the Fifth Circuit held that while the 
first sentence of section 13 “purports to give no new cause of action,” the 
second sentence gives a producer the right to sue for damages and appropriate 
equitable remedies, including an injunction. Id. at 556. However, the court determined that an injunction 
would have been inequitable in that case because Blankenship’s single well did 
not produce as much oil as Magnolia’s many wells. Id. at 
554. Instead, Magnolia should have requested that the Railroad Commission 
regulate the distribution of oil to each operator. Id. at 
556. Exxon argues that Magnolia stands for the proposition that 
the Railroad Commission has primary jurisdiction to regulate the allocation of 
oil between producers from a common reservoir and prohibits a private cause of 
action under what is now section 85.321. We agree Magnolia explains that, 
at the time, statutes gave the Railroad Commission primary jurisdiction to 
adjust correlative rights of oil and gas owners in a common reservoir, but we 
disagree on the latter assertion. Exxon’s reading overstates Magnolia’s 
holding. Magnolia reasons that, compared to the 
Commission’s proration of production, allowing 
such allocation to be performed by the random institution and adjudication of 
private lawsuits would be problematic. Surely that is correct. But 
Magnolia does not hold that section 85.321’s predecessor bars private 
lawsuits for a mineral owner’s recovery of damages. Magnolia does not 
answer that question except to say that if section 85.321’s predecessor creates 
such a private cause of action, it does not provide a right to an injunction 
when the evidence fails to establish an equitable basis for doing so. 85 F.2d at 556.
            
Furthermore, the Fifth Circuit has held on more than one occasion, not 
inconsistent with Magnolia, that the language in section 85.321’s 
predecessor (section 13 of article 6049c) does, in fact, create a private cause 
of action. Turnbow v. Lamb, 95 
F.2d 29, 31 (5th Cir. Tex. 1938) (“Article 6049c, section 13, Vernon’s Civil 
Stat. Texas, expressly recognizes and preserves to an injured party his cause of 
action for damages ‘or other relief’ against a violator of the oil production 
laws.”); see Sun Oil Co. v. Martin, 330 F.2d 5, 5 (5th Cir. Tex. 1964) 
(adopting the lower court’s reasoning in Sun Oil Co. v. Martin, 218 F.Supp. 618, 621–22 (S.D. Tex. 1963) (explaining that a 
violation under section 13 of article 6049c “may give rise to an action for 
damages”)); see also Ivey v. Phillips Petroleum, Co., 36 F. Supp. 811, 
816 (S.D. Tex. 1941) (holding, in accord with Fifth Circuit law, that a 
plaintiff does not have standing to sue pursuant to section 13 of article 6049c 
if no Railroad Commission regulation or state law occurred). Although section 
85.321 and section 13 of article 6049c are not identical, the pertinent parts of 
section 85.321 and section 13 are the same. Act 
effective August 12, 1931, 42nd Leg., 1st C.S., ch. 
26, § 13, 1931 Tex. Gen. Law 46, 53, repealed by Act effective 
September 1, 1977, 65th Leg., R.S., ch. 871, § 1, 1977 
Tex. Gen. Law 2345, 2527. Thus, we do not agree that Magnolia 
interprets section 13 of article 6049c to prohibit a private cause of 
action.
            
Exxon also argues that section 85.321 limits the scope of a private cause 
of action to waste and does not extend to Emerald’s second cause of action, 
which relates to section 89.011 and the duty of an operator to plug wells 
properly. Even if the alleged improper plugging 
damaged the wells, Exxon argues that these allegations do not prevent Emerald 
from sinking new wells and developing oil. Taking Emerald’s allegations as true, 
they do not constitute waste under the Natural Resources Code because Exxon’s 
alleged conduct did not cause the loss of oil or escape of gas. See Tex. Nat. Res. Code §§ 85.045–.047 
(concerning waste).
            
However, the question still remains whether section 85.321 creates a 
cause of action for a section 89.011 plugging violation. The plain language of 
section 85.321 casts a wide net. The statute states that an aggrieved owner may 
sue for damages arising from violations of (1) provisions of this chapter, (2) 
another law of this state prohibiting waste, or (3) a valid rule or order of the 
Railroad Commission. Id. § 
85.321. The first two classes of causes refer to waste, but a violation 
of a Commission rule or order triggers the third category of actions. Emerald 
asserts that Exxon violated section 89.011 by violating the Commission rules 
regulating plugging in section 3.14 of title 16 of the Texas Administrative 
Code. Emerald’s allegations that Exxon violated the 
Commission’s plugging rules raise the question of whether this type of violation 
triggers the right to a private cause of action under the third prong of section 
85.321 and, therefore, gives Emerald standing.
B. Standing by Statute
            
The Constitution requires standing to maintain suit. Williams v. Lara, 52 S.W.3d 171, 178 (Tex. 2001). A 
party suing under a statute must establish standing, or the right to make a 
claim, under that statute. See id.; Scott v. Bd. of Adjustment, 
405 S.W.2d 55, 56 (Tex. 1966). In these cases, the statute itself 
provides the framework for the standing analysis. See Williams, 52 S.W.3d at 178–79; Scott, 405 S.W.2d at 56. We do 
not imply a right of enforcement just because a party has suffered harm from the 
violation of a statute; we look to the intent of the Legislature as expressed in 
the language of the statute. See Brown v. De la Cruz, 
156 S.W.3d 560, 567 (Tex. 2004). Here, we analyze section 
85.321 to determine if the Legislature intended to confer standing upon a party 
in Emerald’s position. See Tex. Dep’t of Protective & 
Regulatory Servs. v. Sherry, 46 S.W.3d 857, 861 
(Tex. 
2001).
C. Subsequent Lessees
            
Having concluded that section 85.321 creates a private cause of action, 
we examine whether Emerald’s status as a subsequent lessee impacts its standing 
to bring a cause of action under section 85.321. The Legislature gave the right 
to a private cause of action to a person who “owns an interest . . . that may be 
damaged by another party violating the provisions of this chapter . . . .” Tex. Nat. Res. Code § 85.321. Exxon argues that 
“violating” is a present tense term that indicates an injury concurrent with 
ownership, whereas Emerald maintains that “violating” would include any party 
that had violated the statute at some point in time. The plain language is 
unclear as to whether concurrent ownership is required or whether subsequent 
interest owners could also maintain a cause of action. The participle phrase 
“violating the provisions of this chapter” could indicate a continuous action: a 
party who has violated, continues to violate, or is 
violating the provision, which would open the cause of action to a wider range 
of interest owners. Id. The statute could also be 
interpreted as another party who is violating the provisions of this 
chapter, which suggests a temporal limitation on the private cause of action. 
Because the text itself is unclear, we look to section 85.321’s statutory 
predecessor and the surrounding context for guidance. See 
Alex Sheshunoff Mgmt. Servs., L.P. v. Johnson, 209 S.W.3d 644, 651–52 
(Tex. 
2006).
            
Section 85.321’s statutory predecessor, section 13 of article 6049c, 
preserved common law standards:
 
Nothing herein contained or authorized and no suit by or 
against the [Railroad] Commission shall impair or abridge or delay any cause of 
action for damages, or other relief, any owner of any land or any producer of 
crude petroleum oil or natural gas, or any other party at interest, may have . . 
. .
 
Act effective August 12, 1931, 42nd 
Leg., 1st C.S., ch. 26, § 13, 1931 Tex. Gen. Law 46, 
53, repealed by Act effective September 1, 1977, 65th Leg., R.S., ch. 871, § 1, 1977 Tex. Gen. Law 2345, 2527. Thus, part of the stated purpose of Chapter 26 was to 
prevent the Railroad Commission from infringing on existing causes of action 
under the common law. The language in sections 85.321 and 85.322 comes directly 
from section 13 of article 6049c.
            
For more than 100 years, this Court has recognized that a cause of action 
for injury to real property accrues when the injury is committed. See Houston Water-Works Co. v. Kennedy, 8 S.W. 36, 37 
(Tex. 
1888). The right to sue is a personal right that belongs to the person 
who owns the property at the time of the injury, and the right to sue does not 
pass to a subsequent purchaser of the property unless there is an express 
assignment of the cause of action. Abbott v. City of 
Princeton, 721 S.W.2d 872, 875 (Tex. App.—Dallas 1986, writ ref’d n.r.e.). 
“Accordingly, a mere subsequent purchaser [of the property] cannot recover for 
an injury committed before his purchase.” Lay v. Aetna Ins. Co., 599 
S.W.2d 684, 686 (Tex. Civ. App.—Austin 1980, writ 
ref’d n.r.e.); see also 
Vann v. Bowie Sewerage Co., 90 S.W.2d 561, 562–63 (Tex. 1936) (holding that 
a cause of action for damages to property resulting from a permanent nuisance 
accrues to the owner of the land at the time the injury begins to affect the 
land, and mere transfer of the land by deed does not transfer the claim for 
damages). Therefore, under Texas common law, absent a conveyance of the 
cause of action, a subsequent owner cannot sue a prior owner for injury to 
realty before the subsequent owner acquired his interest. See Vann, 90 
S.W.2d at 562–63; see also Haire v. 
Nathan Watson Co., 221 S.W.3d 293, 298 (Tex. App.—Fort Worth 2007, no pet.); 
Cook v. Exxon Corp., 145 S.W.3d 776, 781 (Tex. App.—Texarkana 2004, no 
pet.); Exxon Corp. v. Pluff, 94 S.W.3d 22, 27 
(Tex. App.—Tyler 2002, pet. denied); Senn v. 
Texaco, Inc., 55 S.W.3d 222, 225 (Tex. App.—Eastland 2001, pet. denied). 
Similarly, a subsequent lessee, like Emerald, can stand in no better shoes than 
a subsequent owner. If the Legislature intended to change this common law 
principle, it could have done so in the statute.
                
Were we to interpret 
section 85.321 to allow Emerald to sue Exxon as a prior lessee, we would expand 
the class of potential claimants beyond that allowed by common law and subsumed 
in the statute. Without explicit direction from the Legislature, we hesitate to 
adopt an interpretation of section 85.321 that would make any party who holds a 
mineral interest indefinitely liable to all subsequent interest holders for 
prior alleged damage to the land. The 
consequences of such an interpretation run contrary to the legislative intent to 
protect and encourage the development of Texas natural resources. See Tex. Const. art. XVI, § 
59. We are mindful of the consequences of a particular construction. 
See Tex. Gov’t 
Code § 311.023(5); McIntyre, 109 
S.W.3d at 745. Absent a legislative enactment clearly 
abrogating the common law, we conclude that Emerald does not have 
standing as a subsequent lessee to pursue a claim under section 85.321 for 
Exxon’s alleged wrongful actions as a prior lessee. See, e.g., Tooke v. City of Mexia, 197 S.W.3d 325, 342–43 (Tex. 2006) (holding that 
Tex. Loc. Gov’t Code § 51.075 
abrogated City of Texarkana v. City of New Boston, 141 S.W.3d 778 
(Tex. 
2004)).
D. Negligence Per Se
            
Because our holding that a subsequent lessee has no standing to bring a 
claim under section 85.321 stems from common law principles, Emerald lacks 
standing to bring a negligence per se claim for the same 
reasons.
III. Conclusion
            
Accordingly, we reverse the court of appeals’ judgment and render 
judgment that Emerald take nothing.
 
________________________________________
                
                
                
                
                
                
Dale 
Wainwright
            
            
            
            
            
            
Justice
 
OPINION DELIVERED: March 27, 2009
 

                





[1] 
The original lessee did not assign its claim for damages to the property to the 
subsequent lessee.

[2]  Kathleen Dunn Greeson (individually and as trustee of Dunn-O’Connor Family 
Trust), Jack Miesch, Laurie T. Miesch, Michael Miesch, Morgan 
Frances Dunn O’Connor, Nancy O’Connor, T. Michael O’Connor, Janie Miesch Robertson, 
and Kelly Patricia Dunn Schaar.