EXXON CORPORATION and Exxon
Texas, Inc., Petitioners,

v.

EMERALD OIL & GAS COMPANY,
L.C., Respondent.

No. 05–0729.

Supreme Court of Texas.

Argued Feb. 13, 2007.

Rehearing Granted Nov. 20, 2009.

Decided Dec. 17, 2010.

Shannon H. Ratliff, Marla Diane Broaddus, Ratliff Law Firm, P.L.L.C., Karen L. Watkins, Patton G. Lochridge, William T. George, McGinnis Lochridge & Kilgore, L.L.P., Austin, S. Jack Balagia Jr., Exxon Mobil Corp., Byron C. Keeling, Keeling & Downes, P.C., Edward John "Jack" O'Neill Jr., Howrey, L.L.P., Houston, for Petitioner.

William J. Joseph Jr., Candace Beth Kaiser Eindorf, Howrey, L.L.P., Alice Oliver–Parrott, Alice Oliver–Parrott, P.C., Maria Teresa Arguindegui, Maria Teresa Arguindegui, P.C., Eileen O'Neill, Ware Jackson Lee & Chambers, LLP, Houston, Deborah G. Hankinson, Hankinson Levinger LLP, Dallas, Elana S. Einhorn, The University of Texas School of Law, Austin, for Respondent.

Zachary S. Brady, Zachary S. Brady, P.C., Lubbock, for Amicus Curiae.

Justice WAINWRIGHT delivered the opinion of the Court.

After issuing our opinion, we granted respondent's motion for rehearing on November 20, 2009 and obtained further briefing from the parties. Without further oral argument, we withdraw our opinion of March 27, 2009 and substitute the following opinion. Our judgment remains unchanged.[1]

In this oil and gas dispute, we determine whether section 85.321 of the Texas Natural Resources Code allows a subsequent mineral lessee to maintain a cause of action against a prior lessee for damages to the mineral interest that occurred prior to the time the subsequent lessee obtained its interest. We hold that section 85.321 creates a private cause of action that does not extend to subsequent lessees. Because the plaintiff in this case owned no interest in the mineral leases when the prior lessee allegedly damaged the interest, the plaintiff lacks standing to assert a cause of action under section 85.321.[2] Accordingly, we reverse the court of appeals' judgment. Today, we also issue our opinion in the rehearing of *Exxon Corp. v. Miesch,* the companion to this case.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In the 1950s, Humble Oil & Refining Company (Humble) held mineral leases with Mary Ellen and Thomas James O'Connor on several thousand acres in Re-

---

1. The Texas Comptroller of Public Accounts; Jerry Patterson, Commissioner of the Texas General Land Office and Chairman of the School Land Board; and Texas Oil & Gas Association filed amicus briefs on rehearing in this case.

2. The original lessee did not assign its claim for damages to the property to the subsequent lessee.

fugio County, Texas (O'Connor Field or Field). Exxon Texas, Inc. succeeded Humble's interest in the leases. Under the leases, Exxon paid a fifty percent royalty, which was higher than the royalty Exxon paid on an adjoining tract. In the 1970s and 1980s, Exxon unsuccessfully sought to renegotiate the royalty percentage with the royalty owners. Deciding that it was no longer sufficiently profitable to continue operating the O'Connor Field, Exxon systematically plugged and abandoned the wells, completing its abandonment of the Field in 1991.

In 1993, Emerald Oil & Gas Company, L.C. (Emerald) obtained leases for a portion of the O'Connor Field and attempted to re-enter the wells. Emerald encountered unexpected difficulties when it tried to re-enter the wells. Emerald alleges that Exxon caused these difficulties by improperly plugging and intentionally sabotaging the wells by putting considerable quantities of metal, unidentifiable refuse, and environmental contaminants into the wells, placing nondrillable material in the wells, and leaving cut casing in the plugged wells. In 1996, Emerald, on behalf of its working-interest owner, Saglio Partnership Ltd., sued Exxon on six claims: (1) breach of a statutory duty to properly plug a well, (2) breach of a statutory duty not to commit waste, (3) negligence per se, (4) tortious interference with economic opportunity, (5) fraud, and (6) negligent misrepresentation. The royalty owners[3] intervened, alleging similar claims.

Exxon moved for partial summary judgment against Emerald and the royalty owners on grounds that: (1) Exxon has no obligation to potential future lessees; (2) there is no private cause of action for breach of a statutory duty to plug a well in a particular way; (3) there is no private cause of action for breach of any statutory duty not to commit waste; and (4) the facts alleged do not give rise to a claim for tortious interference with economic opportunity; but (5) in the alternative, if the royalty owners have a claim against Exxon for failure to plug the wells properly, it sounds in contract only, not in tort.

The trial court granted portions of Exxon's motion for partial summary judgment, concluding that under sections 85.045, 85.046, 85.321, and 89.011 of the Texas Natural Resources Code and Title 16 section 3.14(c)(1) of the Texas Administrative Code, Exxon owed no statutory duty to potential future lessees, including Emerald. Accordingly, the trial court granted partial summary judgment in Exxon's favor on Emerald's three statutory claims of (1) negligence per se, (2) breach of a statutory duty to plug a well properly, and (3) breach of a statutory duty not to commit waste. The trial court then severed those claims and proceeded to trial on Emerald's three remaining claims against Exxon: fraud, negligent misrepresentation, and tortious interference. The court also denied Exxon's motion for summary judgment on the royalty owners' claims and tried those claims. This appeal arises from Emerald's challenge to the trial court's summary judgment on the statutory claims.

The court of appeals reversed and remanded Emerald's three statutory claims to the trial court, holding that section 85.321 imposes a duty on current lessees to

---

**3.** The current royalty owners who are petitioners in this case are: Morgan Dunn O'Connor, T. Michael O'Connor, Brien O'Connor, Kelly Patricia Dunn Schaar, Nancy O'Connor, Bridey Dunn Greeson, individually and on behalf of the Dunn–O'Connor Family Trust, Laurie T. Miesch, Jack Miesch, Michael L. Miesch, Molly Miesch Allen, and Janie Miesch Robertson.

future lessees and thus provides a basis for a cause of action against Exxon. Exxon petitioned this Court for review. We now review the trial court's summary judgment de novo. *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). Our opinion on rehearing in *Exxon v. Miesch,* also issued today, decides the appeal of claims that were tried.

## II. DISCUSSION

### A. Private Cause of Action

■ Two of Emerald's claims against Exxon invoke statutory duties—breach of statutory duty to plug a well properly and breach of statutory duty not to commit waste. Emerald's pleadings cite section 85.321 of the Texas Natural Resources Code as the basis for its standing to bring the first claim and refers to other related provisions of the Code in support of standing to bring the second claim. Section 85.321, titled "Suit for Damages," reads:

> A party who owns an interest in property or production that may be damaged by another party violating the provisions of this chapter that were formerly a part of Chapter 26, Acts of the 42nd Legislature, 1st Called Session, 1931, as amended, or another law of this state prohibiting waste or a valid rule or order of the commission may sue for and recover damages and have any other relief to which he may be entitled at law or in equity. Provided, however, that in any action brought under this section or otherwise, alleging waste to have been caused by an act or omission of a lease owner or operator, it shall be a defense that the lease owner or operator was acting as a reasonably prudent operator would act under the same or similar facts and circumstances.

TEX. NAT. RES.CODE § 85.321. The court of appeals held that section 85.321 creates a private cause of action for damages resulting from statutory violations. We agree.

■ In construing statutes, this Court starts with the plain language of the statute. *McIntyre v. Ramirez*, 109 S.W.3d 741, 745 (Tex.2003). The language of section 85.321 clearly creates a private cause of action. A party whose interest in property is damaged by another party violating provisions of a conservation law of this state or a Texas Railroad Commission rule or order "may sue for and recover damages" and other relief to which the party may be entitled. TEX. NAT. RES.CODE § 85.321. Section 85.321 also expressly provides a defense to civil actions for lease owners and operators acting as a reasonably prudent operator would act under the same or similar circumstances, adding more credence to the conclusion that section 85.321 creates a private cause of action. *Id.*

This Court previously reached the same conclusion. In *HECI Exploration Co. v. Neel,* royalty owners sued their lessee for failing to notify them that the lessee sued the operator on an adjoining tract whose overproduction of oil, in violation of Railroad Commission rules, damaged the common reservoir. 982 S.W.2d 881, 884 (Tex. 1998). The court of appeals held that the lessee violated an implied covenant to notify the royalty owners of an intent to sue the offending operator. *Id.* at 884–85. This Court held no such implied covenant exists because the lessee's suit against the adjoining operator does not collaterally estop the royalty owners from suing separately under section 85.321. *Id.* at 890–91. "When a mineral or royalty interest owner is damaged by a violation of the conservation law of this state or a Railroad Commission rule or order, section 85.321 of the Texas Natural Resources Code also expressly provides for a damage suit against the offending operator." *Id.*

Relying on *Magnolia Petroleum Co. v. Blankenship*, 85 F.2d 553, 556 (5th Cir. 1936) as persuasive authority, Exxon urges the Court to disregard *HECI Exploration* and hold that section 85.321's predecessor, article 6049c, did not create a private cause of action. *Magnolia* involved a dispute between two lessees producing from a common reservoir. *Id.* at 554. Magnolia produced oil from several wells on a tract of eighty-one acres while Blankenship had one well on half an acre. Blankenship had sunk his well without a permit. The Railroad Commission sued him, seeking a $1,000 penalty. Blankenship countered for a certificate authorizing him to operate the well. The trial court authorized the penalty and also ordered the certificate of operation. Magnolia appealed the decision, contending that the trial court did not have authority to order the certificate of operation and moved for an injunction against Blankenship under section 13 of article 6049c. *Id.* at 554, 556. Interpreting the statute, the Fifth Circuit held that while the first sentence of section 13 "purports to give no new cause of action," the second sentence gives a producer the right to sue for damages and appropriate equitable remedies, including an injunction. *Id.* at 556. However, the court determined that an injunction would have been inequitable in that case because Blankenship's single well did not produce as much oil as Magnolia's many wells. *Id.* at 554. Instead, Magnolia should have requested that the Railroad Commission regulate the distribution of oil to each operator. *Id.* at 556. Exxon argues that *Magnolia* stands for the proposition that the Railroad Commission has primary jurisdiction to regulate the allocation of oil between producers from a common reservoir and prohibits a private cause of action under what is now section 85.321. We agree *Magnolia* explains that, at the time, statutes gave the Railroad Commission primary jurisdiction

to adjust correlative rights of oil and gas owners in a common reservoir, but we disagree on the latter assertion. Exxon's reading overstates *Magnolia*'s holding. *Magnolia* reasons that, compared to the Commission's proration of production, allowing such allocation to be performed by the random institution and adjudication of private lawsuits would be problematic. Surely that is correct. But *Magnolia* does not hold that section 85.321's predecessor bars private lawsuits for a mineral owner's recovery of damages. *Magnolia* does not answer that question except to say that if section 85.321's predecessor created such a private cause of action, it did not provide a right to an injunction when the evidence fails to establish an equitable basis for doing so. *Id.* at 556.

Furthermore, the Fifth Circuit has held on more than one occasion, not inconsistent with *Magnolia*, that the language in section 85.321's predecessor (section 13 of article 6049c) does, in fact, create a private cause of action. *Turnbow v. Lamb*, 95 F.2d 29, 31 (5th Cir.1938) ("Article 6049c, section 13, Vernon's Civil Stat. Texas, expressly recognizes and preserves to an injured party his cause of action for damages 'or other relief' against a violator of the oil production laws."); *see Sun Oil Co. v. Martin*, 330 F.2d 5, 5 (5th Cir.1964) (adopting the lower court's reasoning in *Sun Oil Co. v. Martin*, 218 F.Supp. 618, 621–22 (S.D.Tex.1963) (explaining that a violation under section 13 of article 6049c "may give rise to an action for damages")); *see also Ivey v. Phillips Petroleum Co.*, 36 F.Supp. 811, 816 (S.D.Tex.1941) (holding, in accord with Fifth Circuit law, that a plaintiff does not have standing to sue pursuant to section 13 of article 6049c if no Railroad Commission regulation or state law violation occurred). Although section 85.321 and section 13 of article 6049c are not identical, the pertinent parts of the two

laws are the same. Act effective August 12, 1931, 42nd Leg., 1st C. S., ch. 26, § 13, 1931 Tex. Gen. Laws 46, 53, *repealed by* Act effective September 1, 1977, 65th Leg., R.S., ch. 871, § 1, 1977 Tex. Gen. Laws 2345, 2527. Thus, we do not agree that *Magnolia* interprets section 13 of article 6049c to prohibit a private cause of action.

## B. Standing of Subsequent Lessees

■ Having concluded that section 85.321 creates a private cause of action, we examine whether Emerald's status as a subsequent lessee impacts its standing to bring a cause of action under section 85.321. The Legislature gave the right to a private cause of action to a person who "owns an interest ... that may be damaged by another party violating the provisions of this chapter...." TEX. NAT. RES. CODE § 85.321. Exxon argues that "violating" is a present tense term that indicates an injury concurrent with ownership, whereas Emerald maintains that "violating" would include any party that had violated the statute at some point in time. The plain language is unclear as to whether concurrent ownership is required or whether subsequent interest owners could also maintain a cause of action. The participle phrase "violating the provisions of this chapter" could indicate a continuous action—a party who has violated, continues to violate, or is violating the provision, which would open the cause of action to a wider range of interest owners. *Id.* The statute could also be interpreted as another party *who is* violating the provisions of this chapter, which suggests a temporal limitation on the private cause of action. Because the text itself is unclear, we look to section 85.321's statutory predecessor and the surrounding context for guidance. *See Alex Sheshunoff Mgmt. Servs., L.P. v. Johnson,* 209 S.W.3d 644, 651–52 (Tex. 2006).

Section 85.321's statutory predecessor, section 13 of article 6049c, preserved common law standards:

> Nothing herein contained or authorized and no suit by or against the [Railroad] Commission shall impair or abridge or delay any cause of action for damages, or other relief, any owner of any land or any producer of crude petroleum oil or natural gas, or any other party at interest, may have....

Act effective August 12, 1931, 42nd Leg., 1st C.S., ch. 26, § 13, 1931 Tex. Gen. Laws 46, 53, *repealed by* Act effective September 1, 1977, 65th Leg., R. S., ch. 871, § 1, 1977 Tex. Gen. Laws 2345, 2527. Thus, part of the stated purpose of Chapter 26 was to prevent the Railroad Commission from infringing on existing causes of action under the common law. The language in sections 85.321 and 85.322 comes directly from section 13 of article 6049c.

■ For more than 100 years, this Court has recognized that a cause of action for injury to real property accrues when the injury is committed. *See Houston Water–Works Co. v. Kennedy,* 70 Tex. 233, 8 S.W. 36, 37 (1888). The right to sue is a personal right that belongs to the person who owns the property at the time of the injury, and the right to sue does not pass to a subsequent purchaser of the property unless there is an express assignment of the cause of action. *Abbott v. City of Princeton,* 721 S.W.2d 872, 875 (Tex.App.-Dallas 1986, writ ref'd n.r.e.). "Accordingly, a mere subsequent purchaser [of the property] cannot recover for an injury committed before his purchase." *Lay v. Aetna Ins. Co.,* 599 S.W.2d 684, 686 (Tex. Civ.App.-Austin 1980, writ ref'd n.r.e.); *see also Vann v. Bowie Sewerage Co.,* 127 Tex. 97, 90 S.W.2d 561, 562–63 (Tex.1936) (holding that a cause of action for damages to property resulting from a permanent nuisance accrues to the owner of the land at

the time the injury begins to affect the land, and mere transfer of the land by deed does not transfer the claim for damages). Therefore, under Texas common law, absent a conveyance of the cause of action, a subsequent owner cannot sue a prior owner for injury to realty before the subsequent owner acquired his interest. *See Vann,* 90 S.W.2d at 562–63; *see also Haire v. Nathan Watson Co.,* 221 S.W.3d 293, 298 (Tex.App.-Fort Worth 2007, no pet.); *Cook v. Exxon Corp.,* 145 S.W.3d 776, 781 (Tex.App.-Texarkana 2004, no pet.); *Exxon Corp. v. Pluff,* 94 S.W.3d 22, 27 (Tex.App.-Tyler 2002, pet. denied); *Senn v. Texaco, Inc.,* 55 S.W.3d 222, 225 (Tex.App.-Eastland 2001, pet. denied). Similarly, a subsequent lessee, like Emerald, can stand in no better shoes than a subsequent owner. If the Legislature intended to change this common law principle, it could have done so in the statute.

Were we to interpret section 85.321 to allow Emerald to sue Exxon as a prior lessee, we would expand the class of potential claimants beyond that allowed by common law and subsumed in the statute. Without explicit direction from the Legislature, we hesitate to adopt an interpretation of section 85.321 that would make any party who holds a mineral interest indefinitely liable to all subsequent interest holders for prior alleged damage to the land. The consequences of such an interpretation run contrary to the legislative intent to protect and encourage the development of Texas natural resources. *See* Tex. Const. art. XVI, § 59. We are mindful of the consequences of a particular construction. *See* Tex. Gov't Code § 311.023(5); *McIntyre,* 109 S.W.3d at 745. Absent a legislative enactment clearly abrogating the common law, we conclude that Emerald does not have standing as a subsequent lessee to pursue a claim under section 85.321 for Exxon's alleged wrongful actions as a prior lessee.[4] *See, e.g., Tooke v. City of Mexia,* 197 S.W.3d 325, 342–43 (Tex.2006) (holding that Tex. Loc. Gov't Code § 51.075 abrogated *City of Texarkana v. City of New Boston,* 141 S.W.3d 778 (Tex.App.-Texarkana 2004)).

### C. Negligence Per Se

 Because our holding that a subsequent lessee has no standing to bring a claim under section 85.321 stems from common law principles, Emerald lacks standing to bring a negligence per se claim for the same reasons.

### III. CONCLUSION

Accordingly, we reverse the court of appeals' judgment and render judgment that Emerald take nothing.

Justice GUZMAN and Justice LEHRMANN did not participate in the decision.

---

4. Emerald and the Commissioner of the Texas General Land Office contend on rehearing that the opinion "effectively says that Exxon is the only party that can sue Exxon for damage resulting from violations of the Natural Resource Code and Railroad Commission regulations." On the contrary, the opinion and the opinion on rehearing explain that persons who had an interest in the realty at the time of the damage to the interest have standing to sue under section 85.321 for the violations listed. Thus, the royalty owners in this case have standing to sue, and they did sue, but too late for at least some of the causes of action. *See Exxon v. Miesch.* Also, an assignee of the realty interest (at the time of the alleged damages) would have standing to sue.