**In The**

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-18-00410-CV**
_____

**TODD POOL AND ELLEN POOL, Appellants**

**V.**

**DOUGLAS LENTZ, ROILYN LENTZ AND GREATHOUSE
CONSTRUCTION, INC., Appellees**

On Appeal from the 284th District Court
Montgomery County, Texas
Trial Cause No. 15-06-06172-CV

**MEMORANDUM OPINION**

The issues in this appeal challenge the trial court's ruling granting the
defendants' plea to the jurisdiction. The underlying suit involves claims filed by
plaintiffs who sued the defendants claiming they raised the elevation of their lot and
diverted the natural flow of water from their lot to the lot the plaintiffs owned, which
they allege damaged the home they were building on their lot. We conclude the trial

1

court erred by concluding it did not have jurisdiction over the parties' dispute. We reverse the trial court's order and remand the case to the trial court for further proceedings, as required to resolve the parties' claims and defenses on their merits.

Background

Douglas and Roilyn Lentz, the defendants in the suit, bought a lot in the Teaswood subdivision in Conroe, Texas in 2012. In early 2014, the Lentzes hired Greathouse Construction, Inc. to build a house on their lot. Greathouse completed the Lentzes' home in February 2015.

In September 2014, Todd and Ellen Pool bought a lot in the Teaswood subdivision adjacent to the lot owned by the Lentzes. The Pools used a company they owned, Sovereign Homes, LLC, to build a home on their lot. In May 2015, while the home was under construction, the home being built by the Pools flooded, which they allege resulted from the Lentzes' conduct in changing the natural flow of the water on their lot.

In July 2015, the Pools sued the Lentzes to recover the damages that allegedly resulted from the flooding of their lot. In the Pools' live pleadings, the Pools alleged five types of claims, for negligence, trespass, nuisance, water code violations, and

2

breach of contract.[1] In their petition, the Pools alleged that, during construction, the construction company the Lentzes hired to build their home raised the elevation of the Lentzes' lot, which altered the flow of water that would have occurred naturally and diverted the water onto the surrounding lots. According to the Pools, the Lentzes created a large berm on their property, which caused most of the water that fell on the Lentzes' lot to flow onto the lot owned by the Pools. The Pools alleged their lot flooded in May 2015 during a heavy thunderstorm, and the water that flowed onto their lot cracked the slab they built on their property and deposited mud on their lot. According to the Pools, the foundation they constructed will continue to deteriorate until it is replaced or repaired.

In response to the suit, the Lentzes moved for summary judgment. In their motion, they alleged the court did not have subject matter jurisdiction over the dispute because the Pools did not have standing to sue. The trial court denied the Lentzes' motion for summary judgment.

---

[1] Tex. Water Code Ann. § 11.086(a) states that "[n]o person may divert or impound the natural flow of surface waters in this state, or permit a diversion or impounding by him to continue, in a manner that damages the property of another by the overflow of the water diverted or impounded." Actions at law and in equity are available as remedies for a defendant's allegedly unlawful diversion of water from property the defendant owns or controls. *Id.* § 11.086(b).

3

Shortly before the trial court called the case for trial, the Lentzes filed a plea to the jurisdiction. In their plea, the Lentzes alleged the court did not have subject matter jurisdiction over the suit because the Pools did not own the lot when the Lentzes raised the elevation of their lot and the prior owner of the lot never assigned her claims against the Lentzes for raising the lot to the Pools. The Lentzes also argued that the Pools no longer owned the property allegedly damaged by the water that entered their property from the Lentzes' lot.[2] In response, the Pools noted that their pleadings alleged a claim for damages that occurred in May 2015, and that at that time they owned their lot.

None of the evidence in the record shows whether there were any existing improvements to the lot the Pools purchased before they bought it. There is also no evidence in the record that demonstrates the individual who owned the lot before the Pools ever alleged or claimed to have been damaged by water running off of the Lentzes' lot. In August 2018, the trial court granted the plea to the jurisdiction and dismissed the Pools' suit.

---

[2] The Pools sold the property to Sovereign Homes, LLC in May 2017. Sovereign Homes, LLC sold the property after it had been improved to a third-party, who bought the lot and improvements on it in July 2018.

Standard of Review

Defendants may challenge a plaintiff's standing to sue by filing a plea to the jurisdiction.[3] Standing is a threshold requirement to the plaintiff's right to maintain a suit.[4] Under Texas law, to establish standing, the "plaintiff must allege 'a concrete injury . . . and a real controversy between the parties that will be resolved by the court.'"[5] The plaintiffs' pleadings must allege a threatened or actual injury, not one that is merely hypothetical.[6]

We look to the plaintiffs' pleadings to determine whether the pleadings allege a concrete injury and demonstrates that the plaintiffs have standing to sue.[7] When examining the pleadings, we construe them in the plaintiffs' favor, but we will consider any evidence the parties presented to support or to oppose a party's plea to decide whether jurisdiction exists over a suit.[8] Courts will not find that a plaintiff

---

[3] *Farmers Tex. Cty. Mut. Ins. Co. v. Beasley*, 598 S.W.3d 237, 240 (Tex. 2020).

[4] *Id*. (citing *Sampson v. Univ. of Tex. at Austin*, 500 S.W.3d 380, 384 (Tex. 2016)).

[5] *Id*. at 241 (quoting *Heckman v. Williamson Cty.*, 369 S.W.3d 137, 154 (Tex. 2012)).

[6] *Id*.

[7] *Id*. (citing *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 446 (Tex. 1993)).

[8] *In Interest of H.S.*, 550 S.W.3d 151, 155 (Tex. 2018).

lacks standing simply because the pleadings and evidence reveal the plaintiff may not ultimately prevail on the claims they file following a trial.[9]

When considering pleas to the jurisdiction, we try to resolve such pleas "'without delving into the merits of the case.'"[10] For example, we do not look beyond the allegations in the plaintiffs' pleadings concerning the alleged amount of the plaintiffs' damages to determine whether the amount in controversy satisfies any jurisdictional requirements, unless "the defendant specifically alleges that the amount was pleaded merely as a sham for the purpose of wrongfully obtaining jurisdiction, or the defendant can readily establish that the amount in controversy is insufficient, as for example when the issue in dispute is a license or right rather than damages."[11] In this case, the Lentzes never pleaded that the Pools had falsely alleged that they owned the lot when the damages to the lot occurred as a sham merely so the trial court could exercise jurisdiction over their suit.

Courts will also "'consider relevant evidence submitted by the parties when necessary to resolve the jurisdictional issues raised.'" When the defendant's plea to the jurisdiction challenges the existence of jurisdictional facts, we consider the

---

[9] *Beasley*, 598 S.W.3d at 241 (citing *DaimlerChrysler Corp. v. Inman*, 252 S.W.3d 299, 305 (Tex. 2008)).

[10] *Id*. (citing *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000)).

[11] *Blue*, 34 S.W.3d at 554.

relevant evidence they have submitted to decide whether the trial court properly resolved the issues raised in the plea, which challenges the trial court's authority to resolve the merits of the claims at issue in the dispute.[12] Even when parties present undisputed evidence to support such pleas, we still must take as true the evidence that favors a finding of standing, and we do that by indulging every reasonable inference and resolving any doubts about the inferences created by the evidence in a manner favoring standing.[13] If, after examining the pleadings and any undisputed evidence, the record shows the plaintiffs do not have standing, we will affirm the order dismissing a case for lack of standing.[14] We apply a de novo standard to review a ruling addressing a party's standing.[15]

## Analysis

In their plea to the jurisdiction, the Lentzes argued that the Pools lacked standing to sue for two reasons. First, they alleged the Pools "did not own the property in question at the time of the alleged acts and/or omissions that form the basis of their claims[.]" Second, they alleged that when the Pools sued, they no longer owned the property that had been damaged as a result of the flooding that

---

[12] *Id.*
[13] *Id.*
[14] *Id.*
[15] *Id.* at 240.

7

occurred in 2015. To support these claims, the Lentzes attached a copy of a deed the Pools obtained when they purchased their lot. This deed shows the Pools bought the lot in September 2014. According to the Lentzes, the Pools bought the lot around six months after the Lentzes had already completed the work required to raise their lot. The Lentzes noted that the Pools did not obtain a deed that contains an assignment of any claims the grantor might have had against the Lentzes for raising their lot.

First, we must determine whether the Pools' pleadings allege a concrete injury. In the pleadings, the Pools alleged that the Lentzes damaged the property owned by the Pools, which they alleged required repairs that they valued at over $300,000. The Pools alleged they purchased the lot in 2014 and the damages occurred in 2015, after they purchased the lot. And the Pools alleged that after they purchased their lot, they improved it by building a foundation and had started to frame a home on it when water from the Lentzes' lot flooded and damaged the property owned by the Pools.

The Lentzes argue the Pools don't own the cause of action against them because the Lentzes finished raising their lot before the Pools bought the adjoining lot. But regardless of when the Lentzes built up their lot, the evidence in the record shows the damages to the property on the adjacent lot occurred in May 2015 when water from the Lentzes lot damaged the construction then in progress on the lot that

8

was, at that time, owned by the Pools. When the cause of action accrued, and who owns the claim at issue in this case, will ultimately turn on whether the Pools were the first people injured by the Lentzes' alleged conduct building up their lot.[16] That's because under Texas law, the right to sue for a permanent nuisance "is a personal right that belongs to the person who owns the property at the time of the injury[.]"[17] And if the nuisance is one that is instead temporary, "a temporary nuisance claim accrues anew upon each injury."[18] Consequently, we need not decide in this appeal whether the Pools' claims were for a permanent or temporary nuisance. In either case, the only evidence before the trial court shows the Pools are the only lot owner who ever claimed to have been injured by the Lentzes' conduct in raising the elevation of their lot.

After taking the Pools' pleadings as true and considering the evidence in the record, we conclude it fails to establish that the Pools did not own the claims for damages that are alleged in the suit. Because the Lentzes failed to establish that the

---

[16] *See Schneider Nat. Carriers, Inc. v. Bates*, 147 S.W.3d 264, 270 (Tex. 2004) (explaining that a claim for a permanent nuisance accrues when the injury *first* occurs or is discovered).

[17] *Exxon Corp. v. Emerald Oil & Gas Co., L.C.*, 331 S.W.3d 419, 424 (Tex. 2010).

[18] *Id*.

9

Pools did not own their claims, we hold the trial court erred when it dismissed the suit.[19]

## Conclusion

On this record, we conclude the Pools have standing to assert their claims. We reverse the trial court's judgment and remand the case to the trial court for further proceedings consistent with this opinion.

REVERSED AND REMANDED.

_____
HOLLIS HORTON
Justice

Submitted on May 22, 2020
Opinion Delivered September 17, 2020

Before Kreger, Horton and Johnson, JJ.

---

[19] *Meyers v. JDC/Firethorne, Ltd.*, 548 S.W.3d 477, 484-85 (Tex. 2018).