**Opinion issued September 14, 2021**



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-19-00917-CV

_____

**MARK HAYNES, DANIELLE MEGAN HAYNES, AND CHARLES
EDWARD HAYNES, Appellants**

**V.**

**MARIO MOLINA AND CHARLENE MOLINA, INDIVIDUALLY AND
DBA MASTER MECHANICAL A/C AND HEATING, JORGE MOLINA,
Appellees**

---

On Appeal from the 270th District Court
Harris County, Texas
Trial Court Case No. 2016-43961

---

## MEMORANDUM OPINION

Mark Haynes—together with his wife, Danielle Megan Haynes, and his

father, Charles Edward Haynes—filed suit after his house was damaged, allegedly

by the appellees' faulty sizing and installation of an air conditioning system. Mario

Molina and Charlene Molina, individually and d/b/a Master Mechanical A/C and Heating, and Jorge Molina (collectively "Master Mechanical" or the "appellees") filed a plea to the jurisdiction and motion for summary judgment. They alleged that Mark and Danielle lacked standing because they did not own the house, Charles's claims were barred by limitations, and there was no evidence of one or more elements of each of Charles's causes of action. The trial court granted the motion without specifying a basis.

On appeal, Charles purports to challenge the trial court's ruling on limitations, but he decided to "forego [sic] argument and briefing for efficiency's sake." Mark and Danielle argue that they have standing because, although Mark's father held record legal title to the house, Mark provided the down payment and paid the mortgage, taxes, and maintenance costs.

We affirm the dismissal of claims made by Charles because his brief was inadequate as to one of the grounds for summary judgment, and we must affirm if any ground for summary judgment is not challenged on appeal. We affirm the dismissal of claims made by Danielle because the evidence does not support an inference that she had an ownership interest in the house. We reverse the dismissal of claims made by Mark because the record demonstrates that he has standing to pursue his claims. We reverse the trial court's judgment, in part, and we remand to the trial court for further proceedings.

## Background

In 1993, Charles E. Haynes and his wife, Martha Haynes, obtained a mortgage for the purchase of a house in the City of Deer Park, Texas. Their son, Mark Haynes, provided the down payment, and thereafter he made monthly payments to his father to pay for the principal and interest on the loan. According to Mark, his father agreed to take a loan in his name because Mark's credit was inadequate at the time. Mark maintains that his father promised to transfer the deed to him once he made the final payment on the house. Neither Charles nor Martha ever took possession of the house. Mark lived in the house with Danielle, and he paid all taxes, insurance, maintenance, and repairs. Mark made the final payment to his father in 2017, and in March 2018, Charles and Martha transferred the deed to Mark.

The appellants have alleged that in June 2014, Jorge Molina, who worked for Master Mechanical, provided an estimate of the cost to replace the air conditioning system on the house, install a filter, and replace ductwork. Based on this estimate and Jorge's representations, the appellants hired Master Mechanical to complete the work. Several weeks later, the system malfunctioned, and Master Mechanical— Jorge and other employees—returned to provide additional service under the warranty. In May 2015, Mark and Danielle raised concerns about water dripping from an air return inside the house. Although Master Mechanical returned to the house to make additional changes to the system, in July 2015, the ceiling in the

3

master bedroom collapsed allegedly due to condensation from the air conditioning system. In the following days, Mark learned that Master Mechanical had failed to replace copper tubing that it previously represented had been replaced, and it failed to obtain a city permit for the air conditioning system installation.

Mark and Danielle filed a complaint with the Texas Department of Licensing and Regulation, which found that Mario Molina failed to obtain a permit before installing the air conditioning system, Mario failed to provide proper installation, service, or mechanical integrity, and Master Mechanical A/C and Heating failed to comply with the 2012 International Residential Code, which had been adopted by the City of Deer Park.

In June 2016, Mark and Danielle sued Mario Molina, Charlene Molina, Master Mechanical A/C and Heating, and Jorge Molina.[1] They alleged causes of action for:

---

[1] They sought the following damages:

> (a) Out-of-pocket expenses;
> (b) Loss of use;
> (c) Cost of replacement housing and replacement of the a/c unit;
> (d) Interest and/or finance charges assessed against and paid;
> (e) Loss of the "benefit of the bargain";
> (f) Cost of repairs to the house and the HVAC unit;
> (g) Remedial costs and costs of completion;
> (h) Reasonable and necessary engineering or consulting fees;
> (i) Mental anguish damages;
> (j) Alternatively, replacement cost for the house should repair be financially impracticable.

(1) violation of the Texas Deceptive Trade Practices Act by

> (a) engaging in an unconscionable action or course of action and taking advantage of their lack of knowledge, ability, or experience to an unfair and unconscionable degree;
>
> (b) making misrepresentations in violation of section 17.46(b) of the Texas Business and Commerce Code;
>
> (c) breaching the implied warranties of fitness for a particular purpose, good and workmanlike performance, and merchantability.

(2) common law fraud;

(3) breach of contract; and

(4) negligence.

Master Mechanical filed a plea to the jurisdiction and a motion for summary judgment, asserting that (1) Mark and Danielle lacked standing to recover damages because they did not own the home when the air conditioning system was installed, and (2) there was no evidence that the damages to the house were caused by problems with the air conditioning system it installed. Mark and Danielle responded with evidence, which Master Mechanical challenged. The trial court did not rule on the plea, the motion for summary judgment, or Master Mechanical's objections to Mark and Danielle's summary judgment evidence. In June 2019, Charles Haynes joined the lawsuit as a plaintiff.

Master Mechanical amended its answer and filed a second plea to the jurisdiction and motion for summary judgment. Master Mechanical again argued

that Mark and Danielle lacked standing to sue because they did not own the house when the air conditioning system was installed. It also argued that Charles's claims were barred by limitations and that there was no evidence of one or more elements of each of his causes of action. In response, Mark and Danielle asserted that they have standing as consumers under the DTPA. They also asserted that they have standing because they have a legal interest in the house as beneficial owners of the property because Mark provided the down payment and the money for all payments thereafter.

The trial court granted Master Mechanical's plea to the jurisdiction as to the claims made by Mark and Danielle, and it granted summary judgment as to the claims made by Charles. The trial court dismissed all claims and rendered a final, appealable judgment.

## Analysis

### I. Charles has waived his challenge to the summary judgment.

We review a trial court's grant of summary judgment de novo. *Eagle Oil & Gas Co. v. TRO-X, L.P.*, 619 S.W.3d 699, 705 (Tex. 2021). The party moving for traditional summary judgment must show that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Eagle Oil & Gas*, 619 S.W.3d at 705. A defendant may obtain summary judgment by conclusively establishing an affirmative defense. *Eagle Oil & Gas*, 619 S.W.3d

at 705. "We review the summary judgment record in the light most favorable to the nonmovant, indulging every reasonable inference and resolving any doubts against the motion." *Id.*

When a movant argues multiple grounds for summary judgment and the order does not specify the ground on which the judgment is rendered, the appellant must negate all grounds on appeal. *McCoy v. Rogers*, 240 S.W.3d 267, 271 (Tex. App.—Houston [1st Dist.] 2007, pet. denied); *Ellis v. Precision Engine Rebuilders, Inc.*, 68 S.W.3d 894, 898 (Tex. App.—Houston [1st Dist.] 2002, no pet.). "If summary judgment may have been rendered, properly or improperly, on a ground not challenged, the judgment must be affirmed." *Ellis*, 68 S.W.3d at 898.

A party appealing a motion for summary judgment must assert either a general issue challenging the summary judgment as a whole or separate issues challenging each independent ground for summary judgment alleged in the motion. *Zapata v. ACF Indus., Inc.*, 43 S.W.3d 584, 586 (Tex. App.—Houston [1st Dist.] 2001, no pet.); *see Malooly Bros., Inc. v. Napier*, 461 S.W.2d 119, 121 (Tex. 1970). "The challenging party must also, however, present . . . arguments and supporting authority in order to merit reversal." *McCoy*, 240 S.W.3d at 272; *see* TEX. R. APP. P. 38.1(i) (providing requisites of appellate briefs).

The third issue in the appellants' brief states:

Is summary judgment on the statute of limitations (as to Charles Haynes) proper when he is added in response to Defendants' belated

concern that a necessary party is omitted? (Appellants forego argument and briefing for efficiency's sake but do not waive this point, fully briefed in Haynes' Response to Summary Judgment.)

Charles did not provide any substantive argument on this issue. In the court of appeals, unbriefed issues are waived. *Compare* TEX. R. APP. P. 38.1(i) ("The brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record."), *with* TEX. R. APP. P. 53.2(i) (providing that petition for review in Supreme Court of Texas need "not address every issue or point included in the statement of issues or points. Any issue or point not addressed may be addressed in the brief on the merits if one is requested by the Court.").

Charles's issue is waived, and therefore the summary judgment ground of limitations has not been negated on appeal. *See McCoy*, 240 S.W.3d at 272; TEX. R. APP. P. 38.1(i). We overrule the third issue, and we affirm the summary judgment as to Charles's claims. *See Ellis*, 68 S.W.3d at 898.

## II. Mark has standing to sue as the beneficiary of a purchase money resulting trust.

On appeal, Mark argues that he has standing because he owned the house at all relevant times. Mark argues that his parents held the title for his benefit and that he provided "every cent of the purchase price." Fundamentally, Mark has argued that he was the beneficial owner by way of a purchase money resulting trust.

Master Mechanical argues that Mark lacked standing because his parents owned the house as evidenced by the record title. Master Mechanical contends that Mark and his parents had an oral contract for deed under which neither legal nor equitable title transferred to Mark until he fully paid the purchase price, which was after the installation of the air conditioning system and collapse of the ceiling.

## A.     Standard of review

A party may challenge a trial court's subject matter jurisdiction by filing a plea to the jurisdiction. *See Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000). We review a trial court's ruling on a plea to the jurisdiction de novo. *Univ. of Tex. M.D. Anderson Cancer Ctr. v. McKenzie*, 578 S.W.3d 506, 512 (Tex. 2019) (citing *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004)). Ordinarily a plea to the jurisdiction challenges the plaintiff's pleadings, asserting that the alleged facts do not affirmatively demonstrate the court's jurisdiction. *See Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 635 (Tex. 2012). We "construe the plaintiff's pleadings liberally, taking all factual assertions as true, and look to the plaintiff's intent." *Heckman v. Williamson Cty.*, 369 S.W.3d 137, 150 (Tex. 2012).

A plea to the jurisdiction may also challenge the existence of jurisdictional facts, and when it does, the parties may present evidence. *Id.* "In those situations, a

trial court's review of a plea to the jurisdiction mirrors that of a traditional summary judgment motion." *Mission Consol. Indep. Sch. Dist.*, 372 S.W.3d at 635.

### B. Standing

Standing is a constitutional prerequisite to suit and a component of subject matter jurisdiction. *Farmers Tex. Cty. Mut. Ins. Co. v. Beasley*, 598 S.W.3d 237, 240 (Tex. 2020); *Heckman*, 369 S.W.3d at 150. "The standing requirement derives from the Texas Constitution's provision for separation of powers among the branches of government, which denies the judiciary authority to decide issues in the abstract, and from the open courts provision, which provides court access only to a 'person for an injury done him.'" *Meyers v. JDC/Firethorne, Ltd.*, 548 S.W.3d 477, 484 (Tex. 2018) (quoting TEX. CONST. art. I, § 13); *see also In re Abbott*, 601 S.W.3d 802, 807 (Tex. 2020) (orig. proceeding) (per curiam) (stating that standing requirement in Texas parallels federal test for Article III cases-and-controversies standing).

"A court has no jurisdiction over a claim made by a plaintiff who lacks standing to assert it." *Heckman*, 369 S.W.3d at 150. "In Texas, the standing doctrine requires a concrete injury to the plaintiff and a real controversy between the parties that will be resolved by the court." *Id.* at 154. The first element of this three-part standing test requires the plaintiff to plead facts that demonstrate that he is "*personally* injured . . . that he, himself (rather than a third party or the public at large), suffered the injury." *Id.* at 155. The second element of the standing test

requires that the alleged injury be "traceable" to the challenged conduct of the defendant so that there is a real controversy between the parties. *Id.* The third element of the standing test requires the plaintiff to establish a "substantial likelihood that the requested relief will remedy the alleged injury in fact." *Id.* (quoting *Vt. Agency of Nat. Res. v. U.S. ex rel. Stevens*, 529 U.S. 765, 771 (2000)).

In general, a cause of action for injury to real property belongs to the person who owned the property at the time of the injury. *Exxon Corp. v. Emerald Oil & Gas Co., L.C.*, 331 S.W.3d 419, 424 (Tex. 2010). *But see Ibarra v. Nicholes*, 01-06-00762-CV, 2007 WL 2214889, at *1 (Tex. App.—Houston [1st Dist.] Aug. 2, 2007, pet. denied) (mem. op.) (deciding appeal in suit between commercial tenant of retail center and subcontractor hired to make improvements to leased space).

## C.    Mark had equitable title in the house at all relevant times.

The central question, which is dispositive of this appeal, is whether Mark and Danielle had an interest in the house when the air conditioning system was installed that is sufficient to satisfy the constitutional standing requirements of a concrete injury to Mark and Danielle that arises from a controversy with Master Mechanical and that can be resolved by an order or judgment of the court. The parties proffer competing theories to explain whether Mark had any ownership interest in the property. No party specifically addresses Danielle's standing.

Mark contends that he had equitable title at all relevant times because a purchase money resulting trust was created by his providing the down payment when his parents took record title of the house. Master Mechanical contends that the record title shows that Mark's parents owned the property, and Mark entered into an oral contract for deed with them, under which his ownership would vest only after all payments had been made. Under Mark's theory, he was the equitable owner (of at least an undivided portion of the property) when the air conditioning system was installed and when the ceiling collapsed. Under Master Mechanical's theory, Mark did not acquire any ownership interest until he made the final payment and the deed was transferred, which occurred after this lawsuit was filed.

### 1.        Record title, legal title, equitable title

Ordinarily, record title is evidence of a person's ownership rights in property. *Milner v. Milner*, 361 S.W.3d 615, 621 (Tex. 2012). Record title refers to the appearance of title in the public record, but it is distinct from the concepts of legal and equitable title. *See Longoria v. Lasater*, 292 S.W.3d 156, 165 (Tex. App.—San Antonio 2009, pet. denied) (citing BLACK'S LAW DICTIONARY 1523 (8th ed. 2004)). Legal title shows apparent ownership, but it does not necessarily signify full and complete title or beneficial ownership. *Longoria*, 292 S.W.3d at 165. Equitable title refers to a person's beneficial interest that entitles the person to acquire formal legal title. *Id.*

12

## 2. Purchase money resulting trusts

It has long been the law in Texas that "[w]hen title to property is taken in the name of someone other than the person who advances the purchase price, a resulting trust is created in favor of the payor." *Tricentrol Oil Trading, Inc. v. Annesley*, 809 S.W.2d 218, 220 (Tex. 1991); *Nolana Dev. Ass'n v. Corsi*, 682 S.W.2d 246, 250 (Tex. 1984); *Cohrs v. Scott*, 338 S.W.2d 127, 130 (Tex. 1960); *Morrison v. Farmer*, 213 S.W.2d 813, 815 (Tex. 1948); *Tarpley v. Poage's Adm'r*, 2 Tex. 139, 150 (Tex. 1847) ("This [purchase money resulting trust] doctrine, according to Mr. Justice Story, has its 'origin in the natural presumption, in the absence of all rebutting circumstances, that he who supplies the money means the purchase to be for his own benefit, rather than that of another, and that the conveyance in the name of another is a matter of arrangement and convenience between the parties for collateral purposes.'") (citations omitted). A thousand years of Anglo-French jurisprudence has brought us to this point. *See* G. BOGERT, THE LAW OF TRUSTS & TRUSTEES § 454 (June 2020 Update). Section 454, "The purchase money resulting trust" states:

> Hundreds of litigated cases attest that it is a common event for one person to pay the price of property and to direct that the conveyance run to another. . . . Taking into consideration the usual human desire to obtain something for value and the relative infrequency of gifts, the courts have held that the events outlined above normally show an intent on the part of the payor of the price to get the benefit of the property bought. Gifts are out of the ordinary course. The obtaining of property or services in return for money paid is the normal expectation.

These purchase money transactions first arose in England in the [M]iddle [A]ges, when the holding of land to uses was a very common practice, and when secret uses were numerous. It was easy to infer that the payor desired to follow the common usage of having the land held to uses, and that he (the payor of the price) was to be the beneficiary of the use. Modern courts have not felt that altered social or economic customs warranted a change from an inference of a trust to an inference of a gift. While trusts may not be as common nowadays as were uses of land in England in the [M]iddle [A]ges, nevertheless they are sufficiently numerous to make them natural devices for property holding.

The courts of equity have therefore established a doctrine that normally the payor of the purchase price of property is entitled to be decreed the beneficiary of a trust where the conveyance was absolute and was made to another with the consent of the payor.

*Id.*

A purchase money resulting trust "arises by operation of law when title is conveyed to one person but the purchase price or a portion thereof is paid by another." *Cohrs*, 338 S.W.2d at 130. "The parties are presumed to have intended that the grantee hold title to the use of him who paid the purchase price and whom equity deems to be the true owner." *Id.* "The trust arises out of the transaction and must arise at the time when the title passes." *Id.* (citing *Morrison*, 213 S.W.2d at 815); *Tolle v. Sawtelle*, 246 S.W.2d 916, 919 (Tex. Civ. App.—Eastland 1952, writ ref'd) (purchase money resulting trust arises out of transaction by which property is purchased; later agreements cannot create a purchase money resulting trust).

A party who provides all or a portion of the purchase price acquires equitable title when the deed is executed. *See Hellmann v. Circle C Properties I, Ltd.*, No. 04-

14

03-00217-CV, 2003 WL 22897220, at *2 (Tex. App.—San Antonio Dec. 10, 2003, pet. denied) ("The creation of the resulting trust in favor of AII [who provided the purchase price] meant that Alejos [record title holder] held bare legal title as a result of the deed while equitable title remained in AII."); *cf. Smithsonian Inst. v. Meech*, 169 U.S. 398, 406–07 (1898) (holding that using parol evidence to prove the existence of a purchase money resulting trust is expressly in accord with the statute of frauds); BOGERT, *supra*, § 454 (explaining that statute of frauds does not apply to purchase money resulting trust because purchase-money beneficiary "acquires at once a vested interest").

A party's equitable ownership arising under a purchase money resulting trust "extends to the proportion that her contribution bears to the total price." *Williams v. Robinson*, No. 12-08-00260-CV, 2009 WL 2356268, at *4 (Tex. App.—Tyler July 31, 2009, no pet.) (mem. op.) (citing first, *San Antonio Loan & Trust Co. v. Hamilton*, 283 S.W.2d 19, 28 (1955), then citing, *Wright v. Wright*, 132 S.W.2d 847, 850 (Comm'n App. 1939), and then citing, RESTATEMENT (SECOND) TRUSTS § 454 (1959)); *see Baylor v. Hopf*, 642, 17 S.W. 230, 231 (1891) (holding that plaintiff's provision of partial consideration for purchase of property entitled her to 28% ownership interest in the land).

The doctrine of resulting trust prevents unjust enrichment of the person in whom legal title rests. *Nolana Dev. Ass'n*, 682 S.W.2d at 250. The holder of

15

equitable title is considered the real owner, and the person vested with legal title is considered to hold the property for the benefit of the equitable-title holder.[2] *Eagle Oil & Gas Co.*, 619 S.W.3d at 706. A party holding equitable title to a house has standing to sue for damage to the house. *See Starr v. A.J. Struss & Co.*, No. 01-14-00702-CV, 2015 WL 4139028, at *4–5 (Tex. App.—Houston [1st Dist.] July 9, 2015, no pet.) (mem. op.) (holding that evidence that plaintiff received equitable title by virtue of parol gift of house defeated challenge to plaintiff's standing to sue for damages due to allegedly faulty installation of air conditioning system).

### 3. Contract for deed

A contract for deed is a "financing arrangement that allows the seller to maintain title to the property until the buyer has paid for the property in full." *Morton v. Nguyen*, 412 S.W.3d 506, 509–10 (Tex. 2013); *see Ferrara v. Nutt*, 555 S.W.3d 227, 236 (Tex. App.—Houston [1st Dist.] 2018, no pet.). Under a contract for deed, "the buyer has an equitable right, but no obligation, to complete the purchase." *Shook v. Walden*, 368 S.W.3d 604, 625 (Tex. App.—Austin 2012, pet. denied) (holding

---

[2]    Some courts refer to the interest of the party providing the down payment as a "beneficial interest" or "beneficial title." *See Estate of Lee v. Ring*, 734 S.W.2d 123, 125 (Tex. App.—Houston [1st Dist.] 1987, no writ) ("The intent of the person who seeks to have beneficial title vested in him or her must be determined from the facts and circumstances existing at the time of the transaction out of which the resulting trust is sought to be established."). Other cases refer to the interest of the "real owners" as "equitable title." *Eagle Oil & Gas Co. v. TRO-X, L.P.*, 619 S.W.3d 699, 706 (Tex. 2021).

that contract for deed provides "persons unable to obtain conventional mortgage financing an alternative means of purchasing real property"). Under a typical real estate contract, the buyer "is contractually obligated to complete the purchase and may be liable for breach upon failure to pay the seller." *Id.*

A contract for deed is an executory contract, which is subject to the statute of frauds and which "is not enforceable unless the contract is in writing and signed by the party to be bound or by that party's authorized representative." TEX. PROP. CODE § 5.072; *Nguyen v. Yovan*, 317 S.W.3d 261, 267 (Tex. App.—Houston [1st Dist.] 2009, pet. denied). The purchaser under a contract for deed obtains an immediate right to possession of the property, but he does not acquire equitable title until the full purchase price has been paid. *Ferrara*, 555 S.W.3d at 240; *Cullins v. Foster*, 171 S.W.3d 521, 533 (Tex. App.—Houston [14th Dist.] 2005, pet. denied) (holding that purchaser under contract for deed obtains equitable title when he has "paid the purchase price and fully performed the obligations under the contract").

### 4. Mark was the beneficiary of a purchase money resulting trust, not a party to an oral contract for deed.

In this case, it is undisputed that record title to the house was taken in Charles's and Martha's names. It is also undisputed that there is no written contract between Mark and his parents regarding the purchase of the house. Mark and Charles both provided affidavits in which each swore that: (1) Mark provided the down payment and made all subsequent payments; (2) Mark took possession of the house;

17

and (3) Mark "had always been the owner of the house." In his deposition Mark testified that his parents owned the house, which he finished paying off in 2017. He also testified that in 2018, his parents transferred the title to him.

The facts are not consistent with a contract for deed. First, there is no written contract for deed, which is required under the statute of frauds. Even if we were to consider parol evidence—which is not available to prove a contract for deed—it does not support the existence of such an arrangement. There is no evidence that Charles and Martha provided any of their money toward the purchase of the house or that they purchased the house at some point prior to entering into an agreement by which Mark would make the payments.

The facts in this case are consistent with a purchase money resulting trust. Both Mark and Charles averred that Mark provided the money for the down payment and continued paying Charles the amount required to satisfy the mortgage. By providing the down payment, a purchase money resulting trust was created at the time that his parents took legal title to the house. The absence of a written agreement is not fatal to the creation of a purchase money resulting trust, which is not regulated by the statute of frauds because the ownership interests—both legal and equitable—immediately vest at the time of the transaction.

Mark clarified that his statement that his parents owned the house was based on the fact that they hold record legal title. His testimony is not inconsistent with his assertions that he always had equitable ownership of the house.

We conclude that Mark was the beneficiary of a purchase money resulting trust and that he had equitable title to the house at all times relevant to this lawsuit. Because he had equitable title, we hold that Mark has standing to sue. *See Starr*, 2015 WL 4139028, at *4–5 (holding that party with equitable title had standing to sue for damage to house). We sustain Mark's first issue. In light of this holding, we do not need to consider his other standing arguments. *See* TEX. R. APP. P. 47.1 ("The court of appeals must hand down a written opinion that is as brief as practicable but that addresses every issue raised and necessary to final disposition of the appeal.").

### 3. The record does not show that Danielle had an ownership interest at any time relevant to this suit.

Our conclusion is different as to Danielle's standing. The record includes no evidence that Danielle contributed in any way to the down payment used to purchase the house, and her name does not appear on any relevant version of the title. We conclude that the record does not demonstrate that Danielle has standing to sue, and we hold that the trial court properly dismissed her claims.

19

**Conclusion**

We affirm the take-nothing summary judgment and dismissal of Charles's and Danielle's claims. We reverse the trial court's grant of the plea to the jurisdiction and dismissal of Mark's claims, and we remand for further proceedings.


Peter Kelly
Justice

Panel consists of Justices Kelly, Guerra, and Farris.