# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

December 31, 2024

Lyle W. Cayce
Clerk

No. 23-11095

_____

MidTexas Industrial Properties, Inc.,

*Plaintiff—Appellant*,

*versus*

U.S. Polyco, Incorporated,

*Defendant—Appellee*.

_____

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:21-CV-2267

_____

Before Haynes, Willett, and Oldham, *Circuit Judges*.

Per Curiam:[*]

MidTexas Industrial Properties, Inc. ("MidTexas") appeals the district court's grant of U.S. Polyco, Incorporated's ("Polyco") motion for summary judgment. For the reasons set forth below, we AFFIRM.

## I.    Background

This case is one in a series of disputes between MidTexas, Polyco, and Texas Central Business Lines Corporation ("TCB"). This particular

_____

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 23-11095

dispute pertains to The Auto Park at the MidTexas International Center ("The Auto Park"), which is an automobile processing and distribution center consisting of approximately 600 acres in Midlothian, Texas. MidTexas leases the majority of land comprising The Auto Park from Texas Properties Trust under a long-term ground lease agreement. On October 1, 2017, MidTexas amended the lease to add a 243-acre parcel ("the Property"), which is the basis for this lawsuit.

Prior to MidTexas's amendment, the Property was leased by TCB, a terminal and switching railroad that used the Property for its transloading operations. Polyco was interested in using TCB's transloading operations for its asphalt business. In 2014, TCB and Polyco entered into two agreements to facilitate the transloading of Polyco's products. In line with these agreements, Polyco built structures on approximately six acres of the Property, including twelve large tanks, a metal building for a lab and office, compressors, heaters, a truck canopy, and a heater canopy. Polyco completed the facility in February 2016 but never opened it. Various disputes arose between Polyco and TCB, prompting Polyco to file a lawsuit in Texas state court. Both parties brought claims against each other in state court, and that litigation remains pending.[1]

At some point during the litigation, TCB cut off Polyco's access to the Property. On August 15, 2016, Polyco sent notice to TCB that it was terminating the parties' agreements. The equipment has since remained unmaintained on the Property and has rusted and sustained storm damage over the years.

---

[1] *See U.S. Polyco, Inc. v. Tex. Cent. Bus. Lines Corp.*, 681 S.W.3d 383 (Tex. 2023) (per curiam), *reh'g denied* (Tex. 2024).

When MidTexas entered into its agreement to lease the Property, it was aware of Polyco's previous agreement with TCB and that the equipment remained on the Property. The lease did not provide a guarantee from Texas Properties Trust that the equipment would be removed, and at the time of the amendment, MidTexas had not received a promise from Polyco that it would remove the equipment. Further, the addition of the Property to the lease did not increase MidTexas's fixed rent. The agreement instead provided that MidTexas would pay an additional rent of 75 percent of gross proceeds *if* MidTexas was able to generate revenue from storing vehicles on the Property or from a similar venture.

MidTexas and Polyco began discussing the removal of the equipment after MidTexas's lease began. Because of security issues involving The Auto Park, the parties had to negotiate the removal. MidTexas asserts that it initially consented to the continued presence of the equipment while the parties engaged in these negotiations. The parties negotiated the removal of the equipment from late 2017 to 2019. They exchanged several drafts of a removal agreement and mediated the issue. But when Polyco stopped responding to draft agreements, MidTexas formally demanded that Polyco remove the equipment or pay rent for use of the Property. MidTexas first sent a letter on September 27, 2019, which provided that MidTexas needed the Property for increasing demands and that the inability to use the Property resulted in a $26,000 a month loss. The letter demanded that Polyco remove the equipment or pay $26,000 in monthly rent.

Polyco did not respond to the September letter in writing and did not remove the equipment. MidTexas thus sent an additional letter on October 24, 2019. The letter expressly stated that MidTexas had not consented to "such extended" use of the Property and again demanded the removal of the equipment. The parties continued to unsuccessfully negotiate the removal of the equipment through March of 2020.

No. 23-11095

On September 22, 2021, MidTexas initiated this suit in federal district court, asserting diversity jurisdiction and alleging claims for trespass and nuisance under Texas law. MidTexas sought actual and exemplary damages, and later amended its complaint to include a request for a permanent injunction.[2] MidTexas subsequently filed a motion for summary judgment, while Polyco filed a motion for summary judgment or, alternatively, motion to dismiss. Polyco argued that MidTexas lacked standing because any claims regarding the Property accrued to Texas Properties Trust or TCB. Polyco also asserted that MidTexas's claims were time-barred. The district court did not address standing but agreed with Polyco on the limitations argument.[3] Accordingly, the court granted Polyco's motion for summary judgment and dismissed the claims. It also denied MidTexas's motion for summary judgment and denied as moot the request for a permanent injunction. MidTexas timely appealed.

## II.   Jurisdiction & Standard of Review

The district court properly exercised diversity jurisdiction pursuant to 28 U.S.C. § 1332.[4] We have jurisdiction over the district court's final order pursuant to 28 U.S.C. § 1291.

We review grants of summary judgment de novo. *Lyda Swinerton Builders, Inc. v. Okla. Sur. Co.*, 903 F.3d 435, 444 (5th Cir. 2018). Summary

---

[2] It is unclear why the injunction is necessary given that both parties have expressed a desire to remove the equipment.

[3] We can affirm on any ground raised in the district court and supported by the record; accordingly, we can address standing. *Williams v. Banks*, 956 F.3d 808, 811 (5th Cir. 2020).

[4] There is complete diversity because MidTexas is a citizen of Delaware and Texas, and Polyco is a citizen of Nevada. 28 U.S.C. § 1332(c)(1). MidTexas's allegation of $624,000 in damages satisfies the amount-in-controversy requirement. *Id.* § 1332(a).

judgment is proper where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Because this is a diversity case, Texas substantive law and federal procedural law apply. *See Lyda*, 903 F.3d at 444.

## III.  Discussion

In diversity cases, plaintiffs cannot maintain a cause of action unless they have standing under state law. *See Ferguson v. Bank of N.Y. Mellon Corp.*, 802 F.3d 777, 780–83 (5th Cir. 2015) (affirming dismissal because plaintiff lacked standing under state law). Here, MidTexas's claims fail because it lacks standing under Texas Law.

The Texas Supreme Court has long recognized that "a cause of action for injury to real property accrues when the injury is committed." *Exxon Corp. v. Emerald Oil & Gas Co.*, 331 S.W.3d 419, 424 (Tex. 2010). "The right to sue is a personal right that belongs to the person who owns the property at the time of the injury, and the right to sue does not pass to a subsequent purchaser of the property unless there is an express assignment of the cause of action." *Id.* Thus, a property owner cannot recover for an injury inflicted before his or her purchase of said property. *Id.* This principle also applies to lessees because "a subsequent lessee . . . can stand in no better shoes than a subsequent owner." *Id.* at 425. Here, MidTexas has not argued that it received an express assignment of a cause of action. Accordingly, standing turns on whether the trespass and nuisance injuries occurred before or after MidTexas leased the Property.

MidTexas argues that there cannot be a trespass or nuisance injury where there is consent; therefore, there was no injury until MidTexas leased the Property and eventually revoked consent for Polyco to leave its equipment. But MidTexas fails to cite case law supporting the notion that standing for injuries to real property hinges on a subsequent owner's consent.

Rather, Texas courts have focused on when the injury *to the property* commences.

Indeed, several courts have held that a plaintiff lacked standing to bring nuisance and trespass claims because the injury commenced before the plaintiff obtained an interest in the property. *See, e.g.*, *Exxon Corp. v. Pluff*, 94 S.W.3d 22, 28 (Tex. App.—Tyler 2002, pet. denied) (reversing jury verdict and finding no standing for claims regarding abandoned oilfield materials where the evidence "showed a continuing condition that already existed on the date of [the plaintiff's] purchase"); *West v. Brenntag Sw., Inc.*, 168 S.W.3d 327, 333–36 (Tex. App.—Texarkana 2005, pet. denied) (holding plaintiff lacked standing for his nuisance and negligence claims because the contaminants at issue were deposited before his ownership); *ETC Tex. Pipeline, Ltd. v. Ageron Energy, LLC*, 697 S.W.3d 334, 345–49 (Tex. App.—El Paso 2023, pet. filed) (holding that a mineral rights lessee lacked standing for nuisance and trespass claims because the harmful chemical began injuring the property under a previous owner).

In a similar case, a Texas court of appeals held that a plaintiff lacked standing for his trespass and nuisance claims regarding equipment left on his property. *Cook v. Exxon Corp.*, 145 S.W.3d 776, 784–85 (Tex. App.—Texarkana 2004, no pet.). The plaintiff alleged that he suffered a decrease in value to the land because of the abandoned equipment. *Id.* at 784. However, the defendant abandoned the equipment *before* the plaintiff purchased the property. *Id.* at 784–85. The court reasoned that "[o]nce the equipment was abandoned, the damage to the property was complete." *Id.* at 785. Thus, the injury occurred before the plaintiff obtained his property rights, and he lacked standing despite the ongoing burden of the equipment. *Id.* at 784–85.

Like the plaintiff in *Cook*, MidTexas has alleged economic harm due to Polyco's equipment hindering its use of the Property. But, as discussed

above, Polyco left its equipment and terminated its agreement with TCB before MidTexas's lease began. Thus, the alleged damage inflicted by the equipment—interference with other uses of the land—was complete before MidTexas obtained an interest in the Property. To the extent the equipment created a trespass or nuisance injury, any such claim accrued to Texas Properties Trust or TCB, as the respective owner and lessee, at the time Polyco left its equipment.

Although this outcome may seem harsh, MidTexas was aware of the equipment and leased the Property with no promise of its removal. In its negotiations with Texas Properties Trust, MidTexas could have insisted on warranties about the condition of the Property or bargained for an assignment of the prior claims. *See id.* at 782. But because MidTexas did not receive an assignment, and the alleged injuries occurred before the lease began, MidTexas lacks standing under Texas law. *See Emerald Oil & Gas Co.*, 331 S.W.3d at 424.

## IV.    Conclusion

For the reasons set forth above, we AFFIRM the judgment of the district court.